Diana M. **DARNELL**

v.

Douglas **LLOYD**, Commissioner of Health, State of Connecticut.

Civ. No. H–75–33.

United States District Court,
D. Connecticut.

May 13, 1975.

Louis I. Parley, University of Conn. Legal Clinic, West Hartford, Conn., for plaintiff.

F. Michael Ahern, Richard J. Lynch, Asst. Attys. Gen., Hartford, Conn., for defendant.

## RULING ON PENDING MOTION

BLUMENFELD, District Judge.

The plaintiff in this case is suing the state Commissioner of Health[1] in order to have the sex recorded upon her birth certificate changed from "male" to "female." She claims that the Commissioner's refusal to make this change is state action violative of certain of her constitutional rights, and thus brings this suit under 42 U.S.C. § 1983 (1970).[2] The Commissioner claims that he has done nothing that violates the plaintiff's constitutional rights, moving either to dismiss for failure to state a claim upon which relief can be granted or for summary judgment. Because substantial documentary evidence has been presented to and not excluded by the court, the motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(b).

■ The Commissioner in part bases his motion on two procedural points. The first is that this suit is barred by the doctrine of res judicata. When Darnell requested the Commissioner to change the sex designation on her birth certificate he held a hearing on the matter at which Darnell was represented by counsel and presented both documentary and testimonial evidence in her own behalf. Commissioner Foote thereafter denied Darnell's request. Darnell appealed his decision under the state Administrative Procedure Act, see Conn. Gen.Stat.Ann. § 4-183(a) (Supp.1975), by filing a petition in the Court of Common Pleas. However, the petition was not filed within 30 days after mailing of the notice of the final decision of the Commissioner, as required by Conn. Gen.Stat.Ann. § 4-183(b) (Supp.1975), and the court sustained the Commissioner's plea in abatement on that ground. Darnell v. Lloyd, No. 23916 (C.P. New London County Mar. 6, 1974). The Commissioner now claims that the above sequence is res judicata as to Darnell's claims.

The Commissioner's position is clearly incorrect. Judge Kaufman faced and decided this precise point several years ago in a case that apparently escaped the defendant's notice:

"At the outset we are presented with the contention that the claims asserted below are *res judicata*. We consider this to be wholly without merit. Appellees argue that James, at his own choosing, was given the full opportunity to litigate his claims be-

---

1. Douglas Lloyd now holds this position. Franklin Foote was Commissioner when Darnell first made her request. Both will herein be referred to as "the Commissioner."

2. Jurisdiction is properly lodged in this court by 28 U.S.C. § 1343(3), (4) (1970).

fore the Commissioner of Education, a 'judicial officer' of the State, and therefore that James should be bound by the Commissioner's decision. . . .

" . . . It is still the law in this Circuit . . . that a Civil Rights plaintiff must exhaust state administrative remedies. Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L. Ed.2d 75 (1970). It hardly can be suggested that a plaintiff having followed the course laid out by *Eisen*, was to be barred henceforth from pressing his claim to final judicial review or to be deprived of his opportunity to litigate his constitutional claims in the judicial forum of his choice. To adopt the full implication of appellees' argument would be to effect a judicial repeal of 42 U.S.C. § 1983 . . .. James would be placed in the paradoxical position of being barred from the federal courts if he had not exhausted administrative remedies and barred if he had."

James v. Board of Educ., 461 F.2d 566, 570–571 (2d Cir.) (footnote omitted), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972). Thus the Second Circuit has apparently decided that the rule of United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), upon which the Commissioner

relies,[3] does not apply to suits under 42 U.S.C. § 1983 (1970).[4]

The fact that the Court of Common Pleas refused to reverse the Commissioner's determination because Darnell's appeal was taken late adds no res judicata effect to the determination.

"That court's dismissal of the plaintiff's appeal was not a decision on the merits and thus does not constitute a bar to further litigation. Restatement of Judgments § 49 (1942). . . . [']If a judgment of dismissal is rendered on jurisdictional grounds, the losing party may accept it; and, instead of seeking a review, may institute another action where one will not be met by the jurisdictional bar.' Illinois Cent. R. R. Co. v. Mississippi Pub. Serv. Comm'n, 135 F.Supp. 304, 306 (S.D.Miss.1955); Kipbea Baking Co. v. Strauss, 218 F. Supp. 696, 699 (E.D.N.Y.1963)."

Hollander v. Sears, Roebuck & Co., 392 F.Supp. 90, at 95 (D.Conn.1975).

■ The defendant's second attempt to make procedural grounds dispositive of this case was raised for the first time at oral argument of this motion, when counsel argued that this is a proper case for application of the abstention doctrine. His argument apparently derives from the fact that the only direct statutory authority for the Commissioner to make changes on the birth certificate does not seem to apply to changes in designations of sex.[5] I am asked to al-

---

3. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose. . . ."

4. In this case there are other reasons to distinguish *Utah Constr. & Mining* as well. First, it applies only to state administrative decisions that are judicial in nature. In this case the decision was nonjudicial. The Commissioner was asked to take action and investigated whether he should do so by holding a hearing. The hearing was not an adversary proceeding in which the Commissioner was empowered to adjudicate the

rights of the parties before him. Rather, it was an advisory proceeding designed to help the Commissioner make his decision.

Second, some of Darnell's claims are addressed to the lack of procedural due process she allegedly received at her hearing before the Commissioner. To the extent that these allegations are shown to be correct, the hearing also fails to measure up to the standards enunciated in *Utah Constr. & Mining*. See Paramount Transp. Sys. v. Teamsters Local 150, 436 F.2d 1064, 1066 (9th Cir. 1971); cf. Hollander v. Sears, Roebuck & Co., 392 F.Supp. 90, at 95, (D. Conn.1975).

5. Conn.Gen.Stat.Ann. § 19–16 (1969):
   "The state department of health, upon

low the state courts to determine whether the Commissioner has the power under this statute to make the change Darnell requested. Darnell finds such an inquiry irrelevant, for she asserts that the Commissioner has the power to make changes other than those specifically authorized by statute under his general mandate to supervise birth records. *See* Conn.Gen.Stat.Ann. §§ 19–4, 19–14 to –15 (1969). As the plaintiff points out, other changes to birth certificates are made for which no specific statutory authority exists,[6] and in considering Darnell's case the Commissioner apparently regarded himself as having power to make the requested change if the birth certificate did not specify Darnell's sex correctly at the time of birth. *See* Exh. 5 to Affidavit of Douglas Lloyd, Mar. 13, 1975. Thus, despite the argument of his counsel, the Commissioner does not really seem to dispute his authority to make the change requested. Whether or not that authority may be found under the statute referred to by counsel is irrelevant if it may be found elsewhere. Therefore there is no unresolved material issue of state law that might call for abstention and reference of this case to the state courts. *See, e. g.,* Coleman v. Ginsberg, 428 F.2d 767, 769–770 (2d Cir. 1970), *quoting* Zwickler v. Koota, 389 U.S. 241, 248–249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967):

"use of the abstention doctrine in cases involving alleged civil rights is not encouraged either by the Supreme Court or by us. . . . However, it has not been completely rejected but has been confined to 'narrowly limited special circumstances.' [One] such ['circumstance' is] . . . an unresolved question of state law the decision of which may 'avoid or modify' several constitutional questions . . . ."

*See generally* Harris County Comm'rs Court v. Moore, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975).[7]

The circumstances of this case may have become apparent already. The plaintiff was yclept male at birth but later had a "sex change" operation. The plaintiff's exact anatomical condition at birth and all of the details of her operation and present circumstances are not clear from the record at present, although her development and treatment between birth and her operation were extensively explored in the hearing before the Commissioner (a transcript of which is before me). Nor are all of the legal theories and defenses fully developed at this point. The plaintiff has used a "shotgun" approach, predicating the wrongfulness of the Commissioner's conduct on many different grounds. The defendant's two-page response to these claims is little more detailed than to call them frivolous. With the suit presently in such a posture, it would accomplish little to consider whether summary judgment for the Commissioner could be entered on each of Darnell's claims.

---

receipt of satisfactory proof in writing and under oath that the natural parents of a person have intermarried since the birth of such person, or whenever satisfactory proof in writing and under oath is submitted to said department with a written request that any errors or omissions concerned with questions of parentage upon the face of a certificate of birth be corrected, shall prepare a new certificate of birth containing, with the other information required, the names of the parents or the corrected matter, which new certificate shall be substituted for the old, and the old certificate shall be sealed and filed in a confidential file. . . ."

6. Darnell's birth certificate has apparently been changed once already, reflecting her name change from John A. Darnell, III, to Diana Margaret Darnell. The change of name does not itself affect the name as recorded on the birth certificate. *See* Conn. Gen.Stat.Ann. § 52–11 (1960) ; *cf.* Don v. Don, 142 Conn. 309, 313, 114 A.2d 203 (1955).

7. Thus I mean to imply nothing as to whether this would be proper case for abstention if the Commissioner seriously contested Darnell's assertion that he is empowered under Connecticut law to make the requested change.

■ It will instead suffice to indicate that *at least* one of Darnell's theories states a cause of action and *may,* if the record as more fully developed establishes that she is presently "female," [8] prove successful. That argument is that the Commissioner violates the equal protection clause by granting some requests for birth certificate changes while denying Darnell's request to make her certificate reflect the asserted fact that she is now female.

■ Charges of "underinclusiveness" —that the state has given benefits to some but not to others who claim to be similarly situated—are generally not favored in the law of equal protection. *See, e. g.,* Vaccarella v. Fusari, 365 F. Supp. 1164, 1169 (D.Conn.1973). But such is not the case where "fundamental interests" are at stake. *See, e. g.,* Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In this case Darnell claims that a birth certificate is a government-issued identification card that has a significant impact on many phases of one's life. For instance, she claims [9] that she will be unable to obtain a license to marry a man unless she can produce a birth certificate proclaiming her a female. The humiliation of carrying a passport [10] declaring one to be of other than his or her apparent sex is easily imagined. It may be that none of these consequences directly implicates one of the traditional "fundamental interests." But at least tangentially one's fundamental interest in marriage is allegedly implicated, *cf.* Boddie v. Connecticut, 401 U.S. 371, 376, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Loving v. Virginia, 388 U.S. 1, 12, 87 S. Ct. 1817, 18 L.Ed.2d 1010 (1967), as may be one's interest in traveling outside this country, *cf.* Zemel v. Rusk, 381 U.S. 1, 14, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); Kent v. Dulles, 357 U.S. 116, 125–127, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), or one's interest in privacy, *cf., e. g.,* Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Moreover, the language in Boddie v. Connecticut, 401 U.S. 371, 376–377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), suggests that courts will scrutinize more carefully a state's justifications of its actions when the state has a monopoly on an institution important to its citizens—marriage dissolution in *Boddie*; identification (conclusive for some purposes) here. *See, e. g.,* United States v. Kras, 409 U.S. 434, 441, 93 S. Ct. 631, 34 L.Ed.2d 626 (1973).

■ This litany of interests and considerations suggests that the Commissioner must show some substantial state interest in his policy of refusing to change birth certificates to reflect current sexual status unless that status also obtained at birth. So far the defendant has shown no state interest in this policy whatsoever. I am, therefore, compelled to conclude that he is entitled neither to have this case dismissed for failure to state a claim nor to the entry of summary judgment in his favor. His motion is denied.[11] It is

So ordered.

---

8. The current sexual make-up of the plaintiff is among the facts that are presently somewhat ambiguous. If a dispute exists as to her femaleness, as the defendant's argument at the hearing on this motion implied, I must accept the plaintiff's view of the facts for purposes of this decision.

9. On this issue there is as yet no evidence in the record.

10. If one seeking a passport claims American citizenship by birth, and if the place where he or she was born kept birth records, a birth certificate must be shown in order to obtain a passport. *See* 22 C.F.R. § 51.43 (1974).

11. As the instant ruling indicates, this case remains quite murky. A pretrial conference will eventually be scheduled in order to give some order to this case. Before then, however, it is hoped that the parties will attempt to clarify the legal and factual issues themselves—by stipulation if possible.