**John F. LOMBARD, Plaintiff-Appellant,**

**v.**

**The BOARD OF EDUCATION OF the CITY OF NEW YORK, and John A. Murphy, Defendants-Appellees.**

**No. 208, Docket 73-2057.**

United States Court of Appeals, Second Circuit.

Argued Dec 5, 1973.

Decided July 22, 1974.

Morris Weissberg, New York City, for appellant.

Leonard Koerner, New York City (Norman Redlich, Corp. Counsel, New

York City, Stanley Buchsbaum, New York City, on the brief), for appellees.

Before WATERMAN and FEINBERG, Circuit Judges, and GURFEIN, District Judge.*

GURFEIN, District Judge:

Plaintiff-appellant John F. Lombard appeals from an order of the United States District Court for the Eastern District of New York, Anthony J. Travia, J., dismissing his complaint against the New York City Board of Education and one John A. Murphy for failure to state a claim upon which relief can be granted and denying as moot his application that pending final disposition of his claims he be granted a preliminary injunction reinstating him as a teacher in the public schools. For permanent relief Lombard seeks from the Board of Education reinstatement as a teacher and an award of all back pay due him. In addition, Lombard seeks money damages from Murphy, the principal of the school where appellant taught, alleging that the principal, by filing false reports with the Board of Education and also by requesting and coercing parents and students to write false reports, had initiated the administrative process which led to and resulted in the discontinuance of Lombard's probationary appointment. This suit is brought under 42 U.S.C. § 1983 [1] with jurisdiction predicated on 28 U.S.C. § 1343(3), (4). There was no opinion below.

Appellant Lombard raises several constitutional claims on this appeal. He contends that he was denied his first amendment rights,[2] and his fourteenth amendment rights to due process under the United States Constitution when his employment as a probationary teacher was terminated by the New York City Board of Education without his first having received written reasons supporting that termination and an evidentiary hearing thereon. He also argues that he was denied his fourteenth amendment rights when the Board of Education disqualified him from teaching with his substitute license without first providing him with written reasons for the disqualification and without granting him an evidentiary hearing.

Appellees Board of Education and Murphy here, as they did in the court below, maintain that res judicata bars all of Lombard's constitutional claims on the ground that he had a full opportunity to raise all the issues presented to the federal court in state proceedings he had brought to challenge the termination of the probationary appointment. The Board also argues that the appellant was not denied due process as he did not make out a claim that he had been deprived of any fourteenth amendment rights.[3]

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. 42 U.S.C. § 1983 reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Although appellant alleges that his first amendment rights have been violated, he offered no factual support in his affidavit in the district court. In view of our disposition we leave the issue without comment.

3. As noted, Judge Travia, without writing an opinion, dismissed the action on the ground that the complaint failed to state a claim upon which relief can be granted. Theoretically, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the inquiry antecedent to this type of dismissal would be restricted to searching the face of the complaint. In his order of dismissal, however, Judge Travia noted that he had relied upon affidavits filed by the plaintiff and the defendants, affidavits which we find contain matters outside the pleadings. In effect, therefore, the judge was required to, and presumably did, dispose of the motion before him as if it were one seeking summary judgment.

The facts follow:

On November 1, 1966, the plaintiff-appellant was assigned as a regular substitute teacher in the New York City public school system to teach at Public School 151 in Queens, New York. He taught as a regular substitute teacher for one year and received a satisfactory rating from his principal, John A. Murphy. On August 11, 1967, the appellant was granted a regular license for a probationary period of three years, effective September 6, 1967. The appellant received credit for one-half year of substitute teaching and therefore his probationary period expired and his permanent appointment became due on March 8, 1970. For his first year of teaching as a regularly licensed teacher in Public School 151, Lombard received a satisfactory rating from his principal.

During his second year as a regular teacher, the 1968–1969 academic year, the principal at Public School 151, John A. Murphy, submitted a report to the Board of Education on March 28, 1969, recommending that the appellant's probationary appointment be discontinued and that he be directed to submit to a medical examination to determine his fitness to teach. In this report and in a subsequent letter of May 5, 1969, the principal enumerated the alleged factual bases for his recommendation that Lombard's probationary appointment be discontinued and that Lombard be required to undergo a medical examination.

Murphy indicated that the teacher had committed acts and had made statements showing prejudice against black pupils, that Lombard had engaged in bizarre acts such as kicking students, that he had used obscene language, that he had violated several rules of the school, including failure to punch the time clock properly, and that he had frequently complained that the heat in his classroom was insufficient.

Lombard's complaint, on the other hand, challenges the principal's motivation for recommending the medical examination and the discontinuance of the appellant's probationary appointment and further denies the substance of the charges made by Murphy. Lombard, describing the aforementioned charges made against him by Murphy as "false," alleges that those charges were made "[i]n bad faith and in retaliation and revenge for" certain acts performed by Lombard.

These acts which Lombard claims provoked Murphy to pursue a vendetta against him include complaints by Lombard to Murphy about insufficient heat in the classroom, Lombard's filing of grievances in response to the principal's refusal to allow appellant to examine his own personnel file and the principal's wrongful withholding of appellant's check from him for nine days, Murphy's refusal of the appellant's request that the Chapter Chairman of the United Federation of Teachers in his school be allowed to accompany the appellant to a conference with an assistant principal, and the appellant's submission of written reports which described incidents of disorderly conduct and obscene language used by black pupils.

In May of 1969, the appellant was examined by two staff physicians of the Board of Education and in June of 1969 by a psychologist. The appellant was found to be suffering from an "emotional upset that is of recent origin and is of a paranoid nature." Pursuant to these findings and without a hearing, the appellant was given an involuntary leave of absence until January 31, 1970.

In September of 1969, the appellant commenced a proceeding under Article 78 of the New York Civil Practice Law and Rules in the New York State Supreme Court, Kings County, challenging the authority of the Superintendent of Schools to place him on an involuntary leave of absence, and seeking to be reinstated as a teacher. The petition was dismissed on January 16, 1970, by Justice Feiden.

In January and March of 1970, the appellant was called for further examination by physicians and psychologists

to determine his fitness to return to duty. The panel recommended that the leave of absence be extended until June 30, 1970.

On the other hand, while on medical leave of absence the appellant applied to the United States Department of Health, Education and Welfare for a disability allowance. HEW gave the appellant a special examination and received a report from a member of the Board of Education's medical panel. On April 7, 1970, HEW, stating that Lombard was not unable to work at his normal occupation, denied his claim for a disability allowance.

On April 20, 1970, pursuant to section 105a of the By-Laws of the Board of Education, a hearing was held before a Committee of the Superintendent of Schools concerning the appellant's probationary status. At this hearing appellant presented written statements in his support, and several witnesses gave unsworn oral testimony on his behalf. There was no testimony relative to appellant's unfitness to teach, and the principal did not testify. The Committee had before it the reports by the principal and the recommendations of the physicians and psychologists who had examined the appellant. The Committee recommended that the probationary appointment be discontinued on the following five grounds:

(1) Illogical and disoriented conversation, causing request for examination by the Medical Department, which found him unfit for duty.

(2) Weakness in discipline and class control.

(3) Incompetent and ineffective instructional performance.

(4) Inattention to routine matters such as keeping records of pupil attendance, admission or discharges.

Poor relations with Supervisors and Teachers.

(5) Violation of the By-Laws on Corporal Punishment.[4]

After Superintendent of Schools Irving Anker had approved the report, the applicable school board, Local School Board No. 23, adopted it on June 11, 1970, to become effective September 10, 1970.

Following his dismissal as a probationary teacher, Lombard sought work with his substitute teacher's license in a number of New York public schools. However, inasmuch as the Board of Education in its Special Circulars # 66 for 1971–1972 and # 89 for 1972–1973 directed school principals not to hire the appellant as a substitute teacher, he was unable to obtain continuous employment, and, indeed, several schools were forced to dismiss Lombard because of the Board's circular.

In June of 1971, Lombard commenced a second Article 78 proceeding in Supreme Court, Kings County, to review the termination of his probationary appointment and to seek reinstatement as a teacher. Justice Cowin denied the petition on June 27, 1972. The Appellate Division affirmed without opinion, 40 A.D.2d 1081, 337 N.Y.S.2d 1003 (2d Dep't 1972), and on February 15, 1973, the Court of Appeals denied leave to appeal, 31 N.Y.2d 648, 341 N.Y.S.2d 1027, 294 N.E.2d 660.

In March of 1973, Lombard commenced this action in the Eastern District of New York.

The appellees contend that this suit is barred by the doctrine of res judicata because the appellant had a full opportunity in his Article 78 proceedings in the state courts to raise all of the issues relating to termination of his services as a probationary teacher. In the first proceeding, in Supreme Court, Kings Coun-

---

4. A District Superintendent, on June 23, 1969, disapproved Mr. Murphy's charge that the plaintiff had hit certain students because investigation "indicates that there is insufficient reliable evidence to prove that in fact these acts took place."

And we note that Mr. Murphy's charge that appellant had committed acts showing prejudice against black pupils was not found to be a ground for the recommendation.

ty, Lombard contended that the Board of Education had failed to comply with a provision of its own by-laws and that its direction to him that he apply for leave of absence without pay was invalid for he still had unexhausted sick leave with pay he was entitled to exhaust. This petition was denied, and the act of the Board was upheld.

In the second, and more important, proceeding, commenced in June of 1971 in Supreme Court, Kings County, the appellant challenged the validity of the order terminating his services as a probationary teacher. He alleged that the Board of Education had acted illegally in terminating his probationary appointment three months after his probationary term of service had expired. Lombard further alleged that the Board of Education's action in terminating his probationary appointment on the ground that he was an unsatisfactory teacher "was illegal, arbitrary and capricious and without foundation and must have been primarily based on the fact that Petitioner's former principal, Mr. John A. Murphy, personally disliked petitioner and was determined to bar him from teaching in the Elementary Schools of the City of New York." It was thus Lombard's position in this state court proceeding, as it is here, that the charges made by Murphy and the unsatisfactory rating issued by him caused the termination of Lombard's probationary appointment and that those charges and that rating were unjustified and without foundation.

In denying the petition, Justice Cowin stated:

> The primary thrust of petitioner's argument is that he acquired tenure by acquiescence. He (petitioner) argues that since his probationary appointment ended in March of 1970 and respondents did not vote to terminate his services until June 1970, he acquired tenure by operation of law.

Disagreeing with this argument, Justice Cowin found that the appellant had not completed his required probationary service at the time his appointment was terminated, and then discussed Lombard's contention that he was entitled to back pay. Finally, at the very end of his opinion, Justice Cowin declared:

> The court is also of the opinion that the hearing accorded petitioner was proper and that the determination made to terminate his services was not arbitrary or capricious.

Lombard did not specifically raise the fourteenth amendment constitutional issue in either of these two Article 78 proceedings, but the appellees argue that, nevertheless, the appellant should have raised them in those state proceedings, and that his failure to do so precludes him from raising them in this section 1983 action.

I

Whether it is called res judicata or claim preclusion, we think for several reasons that policy considerations should not permit the extension of the res judicata doctrine in this case to issues of procedural due process which are said to raise claims under 42 U.S.C. § 1983.

First, when the Civil Rights Act was authoritatively interpreted in Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), the Supreme Court said:

> The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.

To apply res judicata to a remedy which "need not be first sought and refused" in the state court, and which actually was not sought would be to overrule the essence of Monroe v. Pape and Lane v. Wilson, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281 (1939).

Second, if a federal action under section 1983 is considered to be the *same* cause of action as the state action for purposes of claim preclusion, then a plaintiff desiring to raise a state statutory construction issue or even a state constitutional issue would, and probably should, not be able to raise these points

in the federal district court in the first instance. See Reid v. Board of Educ., 453 F.2d 238 (2d Cir. 1971); Coleman v. Ginsberg, 428 F.2d 767 (2d Cir. 1970). Here, even if we would like to put all the issues in the same court, we are better off not to *compel* the plaintiff to seek constitutional redress in the state court or statutory construction in the federal court. See McNeese v. Board of Educ., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). That is what we think choice of forum means in Civil Rights Act cases.

Third, while the per curiam opinion in Frazier v. East Baton Rouge School Board, 363 F.2d 861 (5th Cir. 1966), contains language that appears to support the application of res judicata in a section 1983 action to a failure to raise the constitutional claim in the state courts, it raises various policy problems if applied to the case at bar. The court in *Frazier* said that "the judgment is conclusive as to all matters which were litigated or *might have been litigated* in the first action." 363 F.2d at 862. The court added that "the only appropriate federal forum for review of his alleged federal claim of discrimination was the United States Supreme Court." Id. But if the appellant inadvertently or through his lawyer's mistake failed to raise the constitutional claim, it is small comfort to tell him that he should look to the Supreme Court for redress. It seems clear enough that if the appellant actually failed to assert his constitutional claim in the state court, he could not get a writ of certiorari from the nonconstitutional judgment of the state court. 28 U.S.C. § 1257(3); Sup.Ct.Rule 19; Cardinale v. Louisiana, 394 U.S. 437, 89 S.Ct. 1161, 22 L.Ed.2d 398 (1969); Ellis v. Dixon, 349 U.S. 458, 75 S.Ct. 850, 99 L.Ed. 1231 (1955); American Surety Co. v. Baldwin, 287 U.S. 156, 162, 53 S.Ct. 98, 100, 77 L.Ed. 231 (1932) ("failure to make seasonably the federal claim"). We prefer to treat the statement in *Frazier* as *obiter* so far as a *procedural* due process claim is concerned, since in *Frazier* there had been a "full hearing" in the state court and procedural due process was not involved.

So, too, other opinions which in language support an extension of the res judicata rule did not involve a claim of deprivation of procedural due process, see Johnson v. Department of Water and Power, 450 F.2d 294 (9th Cir. 1971), or the appellant had failed to object to evidence. Coogan v. Cincinnati Bar Ass'n, 431 F.2d 1209 (6th Cir. 1970). Howe v. Brouse, 422 F.2d 347 (8th Cir. 1970), was a case where the defendant judge had already been held by the state court to have judicial immunity.

We think that the problem, strictly speaking, is not a rés judicata problem. We think it is rather a question of whether the appellant has "waived" his constitutional rights. It is not quite fair to say that he "waived" his right to assert in the administrative agency itself that the process afforded was not "due process." For such an attack in the administrative agency itself on the ground of unconstitutionality would be futile. Cf. McNeese v. Board of Educ., supra, 373 U.S. at 675, 83 S.Ct. 1433. See also Judge Friendly's explanation of Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), in Eisen v. Eastman, 421 F.2d 560, 569 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); Friendly, Federal Jurisdiction: A General View 100 & n. 111. Nor is the plaintiff required to make the attack in an Article 78 proceeding in the state court, for section 1983 gives him an independent supplementary cause of action, and he may choose the federal court as the preferred forum for the assertion of constitutional claims of violation of due process. McNeese v. Board of Educ., supra. Indeed, if waiver is treated as a modality of exhaustion of remedy, the exhaustion, similarly, need not be of the state judicial remedy, but only of the administrative remedy. See James v. Board of Educ., 461 F.2d 566 (2d Cir. 1972).

Of course, where a constitutional issue is actually raised in the state

court, as it can be in an Article 78 proceeding by treating it as an action for a declaratory judgment, Matter of Kovarsky v. Housing & Development Administration, 31 N.Y.2d 184, 335 N.Y.S.2d 383, 286 N.E.2d 882 (1972), the litigant has made his choice and may not have two bites at the cherry. See Thistlethwaite v. City of New York, 497 F.2d 339 (2d Cir. 1974). Nor need we consider here the situation of a constitutional claim where no independent supplementary cause of action like an action under the Civil Rights Act is involved, and where the constitutional claim could have been adjudicated just as well by the state court. See American Surety Co. v. Baldwin, supra, 278 U.S. at 164–167, 53 S.Ct. 98. For the foregoing reasons policy prevents the application of res judicata (claim preclusion) in this case.

■ If we treat the problem as a more limited one of collateral estoppel (issue preclusion), policy still prevents its application for the reasons given. In addition, for the doctrine of issue preclusion to be applicable, the determination of the issue must have been *necessary* to the decision. Restatement (Second) of Judgments § 68h (Tent. Draft No. 1, 1973); Halpern v. Schwartz, 426 F.2d 102 (2d Cir. 1970). There may have been a number of reasons why Lombard was dismissed without a determination on the merits of the issue whether Murphy's charges were based upon bias or even reprisal. The failure to put Murphy on his oath and to permit Lombard to cross-examine him tends to support the conclusion that a finding on Murphy's bias was not necessary to the decision that Lombard was mentally unfit.

Finally, the policy conclusions may be stated in summary form. First, it is not consistent with Monroe v. Pape, supra, to put appellant in a position where he cannot raise the constitutional question on an application for a writ of certiorari either to the state court *or* to the federal court, i. e., to *any* court. Second, it is not consistent with constitu-

tional due process to permit to stand a "finding" that appellant is, in effect, mentally incompetent or inadequate without giving him an opportunity in *any* tribunal to confront his accusers in an evidentiary type of hearing.

II

Turning to the merits, we hold that appellant's case comes within the exception stated in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Though Lombard did not have tenure and, therefore, presumptively had no property right either as a probationary or substitute teacher, Canty v. Board of Educ., 470 F.2d 1111 (2d Cir. 1972), cert. denied, 412 U.S. 907, 93 S. Ct. 2301, 36 L.Ed.2d 973 (1973), he was deprived of his reputation as a person who was presumably free from mental disorder. Without his being given the right to confront witnesses, the termination of his probationary employment was recommended by the Committee of the Superintendent on the primary ground: "I. Illogical and disoriented conversation, causing request for examination by the Medical Department, which found him unfit for duty."

■■ This is not only a finding but a stigma. If it is unsupportable in fact, it does grievous harm to appellant's chances for further employment, as indeed the record demonstrates, and not only in the teaching field. For that reason he was entitled to a full hearing.

The distinction taken by the Court in *Roth* is that where the appellant's "good name, reputation, honor, or integrity is at stake" or "the State, in declining to re-employ [the respondent], imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities," 408 U.S. at 573, 92 S.Ct. at 2707, he may claim a deprivation of "liberty" under the due process clause of the fourteenth amendment. A charge of mental illness, purportedly supported by a finding of an administrative body, is a heavy burden for a young person to carry through life. A serious constitutional question

arises if he has had no opportunity to meet the charge by confrontation in an adversary proceeding. Cf. Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966) (accusation of racial bias). Unfortunately, the district court did not write an opinion revealing the precise basis of its decision. But we construe the judge's ruling as resting on a determination—which we have held to be incorrect —that Lombard had no protected interest entitling him to due process. We conclude, therefore, that he should be given a trial in the district court to determine whether appellees have violated his federal constitutional rights. Cf. Arnett v. Kennedy, 416 U.S. 134, 156– 159, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (noting right to plenary posttermination hearing). Summary judgment was inappropriate. Cf. Leonard v. Sugarman, 466 F.2d 1366, 1367 (2d Cir. 1972) (plaintiff did not "seriously contest" charges of misconduct). In reversing the judgment, we remand for further consideration of Lombard's motion for a preliminary injunction in conformity with this opinion.

Judgment reversed and remanded.