Louis SACHETTI, Lena Sachetti, Vramit Tejapaibul, Barry L. Mendelson, Sherry Mendelson, Sidney Weinberger and Celia Weinberger, Plaintiffs,

v.

G. Norman BLAIR, Mary Carlson, Warner Pyne, Jr., Anton Schramm and Paul Kalos, in their capacities as the duly appointed members of the Planning Board of the Town of Mamaroneck, New York, William J. Paonessa, in his capacity as duly appointed Town Building and Plumbing Inspector of the Town of Mamaroneck, New York, George R. Morrow, Jr., in his capacity as the duly appointed Clerk of the County of Westchester, New York, and Windsor Realty Corporation (Westchester Heights), Defendants.

No. 80 Civ. 5604.

United States District Court,
S. D. New York.

April 9, 1982.

Barry L. Mendelson, Sidney Weinberger, pro se and for plaintiffs.

Campbell & Hyman by Charles A. Brooks, New Rochelle, N. Y., for defendant Windsor Realty Corp.

James J. Johnston, Larchmont, N. Y., for defendant officials of Town of Mamaroneck.

Samuel S. Yasgur, Westchester County Atty., White Plains, N. Y., for defendant George R. Morrow, Jr.

OPINION

GRIESA, District Judge.

On May 28, 1981 the court granted defendants' motion to dismiss this case. The

ground was the res judicata effect of a decision in the state Supreme Court in an Article 78 proceeding.

Subsequently, plaintiffs moved for reargument. The contention was that the ruling of May 28, 1981 involved an improper application of *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Following the filing of the motion for reargument there was a further hearing and submission of papers, to clarify the issues.

The motion for reargument is granted. Upon reargument, it is again determined that defendants' motion for summary judgment should be granted and the action should be dismissed. Plaintiffs' claim is barred by res judicata. Alternatively, it is abundantly clear that plaintiffs have no valid case on the merits.

### Summary of Claim

Plaintiffs allege violation of due process rights granted by the Fifth and Fourteenth Amendments. The claim arises from the action of the Planning Board of the Town of Mamaroneck approving a residential subdivision. Included in the approved plan was a road which was to run near the rear property lines of plaintiffs' homes. Plaintiffs complain of interference with the safety of their families and diminution of their property values.

In connection with this claim plaintiffs refer to Article IV, Section 8E of the Subdivision Regulations of the Town of Mamaroneck, which states:

"The subdivider shall observe the following general requirements and principles of land subdivisions:

E. Each block shall be planned to provide two rows of lots, but irregularly shaped blocks indented by cul-de-sac streets may be considered to be acceptable when designed in a manner acceptable to the Planning Board."

Plaintiffs also refer to Article IV, Section M of the same regulations, which provides:

"Variations of the general requirements above outlined may be permitted by the Planning Board on application to the Planning Board when in its judgment, special factors warrant such a variation."

Plaintiffs contend that, according to Section 8E, there must be a second row of lots behind their own lots before there can be any road. Under the approved plan no such second row of lots is provided for. Consequently, plaintiffs argue that the Planning Board action violates Section 8E.

The constitutional issue is said to arise because it is claimed that the Planning Board must have granted a variance under Section M (although, in fact, no formal variance was granted). Plaintiffs contend that the Planning Board failed to give notice of any "special factors" it contemplated relying on in granting such a variance, and that there were no formal findings of such special factors which created a proper record.

### Facts

Plaintiffs are residents of the Town of Mamaroneck. They object to a planned subdivision of 29 acres of land to be named "Marbourne Meadows." The plan was approved by the Planning Board on December 13, 1978. Approval followed several public hearings.

The first Planning Board hearing took place on June 14, 1978. At this meeting Marbourne Associates, the developer, presented a plan which provided for two access roads, neither of which adjoined plaintiffs' property. At this meeting the Board asked the developer to revise the plan to include a third access road.

A second hearing was held July 12, 1978. Marbourne submitted a plan with a third access road, running near the rear of plaintiffs' property lines. This is essentially the road plan which was later approved and which is the subject of this lawsuit. There was a discussion of the fact that the third road was located in such a way as to avoid certain rocky terrain and thus to minimize blasting. Plaintiffs were present at the meeting and objected.

A third hearing was held on August 9, 1978. One of the plaintiffs presented two alternative plans, the first with two access

roads, and the second with three access roads. None of these roads ran close to plaintiffs' lots. The Planning Board indicated that it favored the three-road plan submitted by Marbourne, because this plan satisfied traffic needs with a minimum of blasting.

A fourth hearing took place on September 13, 1978. An attorney retained by plaintiffs attended the hearing and presented a written objection to the Marbourne proposal, including the contention that the third access road running behind plaintiffs' lots would result in a violation of Section 8E.

The next hearing of significance was on November 8, 1978. At this time the Town Engineer submitted a memorandum to the Planning Board recommending approval of the Marbourne proposal with the three access roads.

The final hearing was on December 13, 1978. A traffic engineer retained by plaintiffs testified that two roads would be sufficient to handle traffic needs. The chairman of the Planning Board remarked about the fact that the Board had requested a plan with three access roads, although the Traffic Engineer of Westchester County had indicated informally to the Town Engineer that the proposed subdivision "would have little or no impact on the traffic." After further discussion the Board resolved to approve the subdivision, with the three access roads, as proposed by Marbourne. The Board did not make a statement of its reasons, nor did it state what its view was regarding compliance with Section 8E and whether a variance was needed or granted.

Plaintiffs brought a proceeding to challenge the Planning Board action in Supreme Court, Westchester County, under Article 78 of New York Civil Practice Law and Rules. Plaintiffs contended that the proposed subdivision was in violation of Section 8E, and that there were no special factors justifying any variance. Plaintiffs also alleged that the subdivision would adversely affect the safety of plaintiffs and their families and the values of their property. On May 15, 1979 Justice Wood ruled that the proceeding should be dismissed. He held that Section 8E did not preclude the plan for the third access road, and that, in any event, the Planning Board had the power to grant a variance under Section M. Justice Wood cited New York case authority to the effect that the decision of a local board, such as the Mamaroneck Planning Board, is presumed correct and will not be set aside unless it is positively demonstrated to be contrary to law. Justice Wood held that such a showing had not been made. Judgment was entered June 11, 1979.

On February 4, 1980 the Appellate Division, Second Department, unanimously affirmed without opinion. Plaintiffs moved for reargument in the Appellate Division or, in the alternative, for permission to appeal to the New York Court of Appeals. By order dated May 15, 1980 the Appellate Division denied both requests.

On June 23, 1980 plaintiffs filed in the New York Court of Appeals a motion for leave to appeal and also a purported notice of appeal as of right. In both the motion and the notice, plaintiffs asserted claims of violation of due process rights under the federal Constitution. This was the first time in the state proceedings that such a federal constitutional issue had been raised. On September 4, 1980 the Court of Appeals denied the motion for leave to appeal. The Court of Appeals also dismissed the appeal as of right "upon the ground that no substantial constitutional question is directly involved."

### Res Judicata

The traditional rule of res judicata is that a prior judgment operates to bind the parties both as to issues actually litigated and determined in the first action and as to those which might have been, but were not, decided in that action. This rule would seem to bar the present action, since the federal constitutional claim now asserted could have been fully litigated in the Article 78 proceeding in the state courts.

However, plaintiffs rely on an exception to the ordinary res judicata rule, which the

Second Circuit has applied in civil rights actions brought under 42 U.S.C. § 1983. This exception was first announced in *Lombard v. Board of Education of New York City*, 502 F.2d 631 (2d Cir. 1974), *cert. denied*, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975), where the court held that, in a § 1983 action, a prior state court judgment was not a bar to a federal constitutional claim which was not litigated in the state court, although it might have been. This holding was said to be based upon *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and particularly the statement of the Supreme Court:

> "The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Id.* at 183, 81 S.Ct. at 481.

The court in *Lombard* stated:

> "To apply res judicata to a remedy which 'need not be first sought and refused' in the state court, and which actually was not sought would be to overrule the essence of *Monroe v. Pape. . . ." Id.* at 635.

The *Lombard* decision has been followed in subsequent Second Circuit cases. *Newman v. Board of Education*, 508 F.2d 277 (2d Cir.), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975); *Graves v. Oligiati*, 550 F.2d 1327 (2d Cir. 1977); *Winters v. Lavine*, 574 F.2d 46 (2d Cir. 1978); *Ornstein v. Regan*, 574 F.2d 115 (2d Cir. 1978).

The application of *Lombard* in the present case poses two problems. The first is that the *Lombard* rule appears to be so clearly contrary to statements by the Supreme Court in the recent case of *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), that *Lombard* can no longer be regarded as controlling authority even in this circuit. The second is that the complaint in this case does not allege a cause of action under § 1983, but a claim directly under the Fifth and Fourteenth Amendments. The court in *Lombard* specifically left open the question of whether a federal court action brought directly under the Constitution (but not based upon § 1983) would be barred by a prior state court action, in which the constitutional claim could have been litigated but was not.

*Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), was a § 1983 action, following a state court criminal proceeding in which Fourth and Fourteenth Amendment claims to suppress evidence had been denied. The § 1983 case was to seek damages for alleged constitutional violations. The Supreme Court held that the § 1983 action was barred by collateral estoppel. The issue was said to relate to collateral estoppel, rather than res judicata, presumably because the "claim" in the state court involved a criminal case against McCurry, whereas the claim in the § 1983 case was for damages against certain police officers. *Id.* at 94 n.5, 101 S.Ct. at 415 n.5. The issue in the § 1983 action—*i.e.*, the constitutionality of certain searches and seizures—had been litigated in the state court in a suppression hearing in the criminal action.

In a footnote, the Court in *Allen* stated that it was expressing no view on the issue decided in *Lombard*—*i.e.*, whether the rules of claim preclusion would apply to bar a § 1983 action, following a state court case where the federal constitutional question was not raised, but could have been.

> "A very few courts have suggested that the normal rules of claim preclusion should not apply in § 1983 suits in one peculiar circumstance: Where a § 1983 plaintiff seeks to litigate in federal court a federal issue which he could have raised but did not raise in an earlier state-court suit against the same adverse party. *Graves v. Olgiati*, 550 F.2d 1327 (CA2 1977); *Lombard v. Board of Ed. of New York City*, 502 F.2d 631 (CA2 1974); *Mack v. Florida Bd. of Dentistry*, 430 F.2d 862 (CA5 1970). These cases present a narrow question not now before us, and we intimate no view as to whether they were correctly decided." *Id.* at 97 n.10, 101 S.Ct. at 416 n.10.

The same reservation is mentioned in footnote 5 at p. 94, 101 S.Ct. at 415.

Despite this reservation, the Supreme Court's broad discussion of res judicata and

collateral estoppel in *Allen* leaves no room for the kind of exception to the normal rules, created by *Lombard*. The Court commenced by defining the traditional res judicata rule:

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* at 94, 101 S.Ct. at 415.

The Court further stated:

"Thus, res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Id.* at 95–96, 101 S.Ct. at 415.

The Court went on to reason that there is nothing in § 1983 or its legislative background indicating any Congressional purpose contravening the *full* effect of the traditional rules of res judicata and collateral estoppel. The Court stated:

"This Court has never directly decided whether the rules of res judicata and collateral estoppel are generally applicable to § 1983 actions. But in *Preiser v. Rodriguez*, 411 U.S. 475, 497 [93 S.Ct. 1827, 1840, 36 L.Ed.2d 439], the Court noted with implicit approval the view of other federal courts that res judicata principles *fully* apply to civil rights suits brought under that statute." (emphasis added). *Id.* at 96, 101 S.Ct. at 416.

And further:

"... nothing in the language of § 1983 remotely expresses any congressional in-

tent to contravene the common-law rules of preclusion...." *Id.* at 97, 101 S.Ct. at 416.

The Court discussed *Monroe v. Pape, supra,* and interpreted it as wholly consistent with full application of traditional preclusion rules. According to *Monroe v. Pape,* Congress intended in § 1983 to provide a supplementary federal remedy where state law and process did not allow full and fair litigation of a constitutional claim. But the Court in *Allen* recognized that this was in accord with the normal res judicata and collateral estoppel rules, which require a full and fair opportunity to litigate the claim or issue in the first action as a predicate to a bar in the second action.

Thus, the Supreme Court in *Allen* has taken the strongest possible view in favor of full application of res judicata and collateral estoppel rules in § 1983 cases. The normal res judicata rule includes a bar against assertion in a second action of an issue which could have been litigated in the first action, but was not. The view that the latter rule does not apply in § 1983 cases is wholly inconsistent with the teachings of *Allen.*[1]

■ As noted earlier, the present case is not brought under § 1983, but directly under the Fifth and Fourteenth Amendments. The Second Circuit in *Lombard* left open the question of whether a federal court action brought directly under the Constitution would be barred by a prior state court action, in which the constitutional claim could have been litigated but was not. 502 F.2d at 637. In view of *Allen v. McCurry,*

---

1. Every circuit, other than the Second, which has considered this question has held normal principles of res judicata to apply. *Robbins v. District Court of Worth County of Iowa,* 592 F.2d 1015 (8th Cir.), *cert. denied,* 444 U.S. 852, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979); *Spence v. Latting,* 512 F.2d 93 (10th Cir.), *cert. denied,* 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975); *Scoggin v. Schrunk,* 522 F.2d 436 (9th Cir. 1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976); *Lovely v. Laliberte,* 498 F.2d 1261 (1st Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974); *Coogan v. Cincinnati Bar Association,* 431 F.2d 1209 (6th Cir. 1970); *Frazier v. East Baton*

*Rouge Parish School Board,* 363 F.2d 861 (5th Cir. 1966); *Accord, Harl v. City of LaSalle,* 506 F.Supp. 1067 (N.D.Ill.1980). Footnote 10 in *Allen v. McCurry, supra,* refers to a Fifth Circuit case as agreeing with *Lombard. Mack v. Florida State Board of Dentistry,* 430 F.2d 862 (5th Cir. 1970), *cert. denied,* 401 U.S. 954, 960, 91 S.Ct. 970, 971, 28 L.Ed.2d 237, 245 (1971). However, in *Mack* no fair hearing was held in the state court. A subsequent case, *Jennings v. Caddo Parish School Board,* 531 F.2d 1331 (5th Cir.), *cert. denied,* 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 180 (1976), reaffirmed the basic Fifth Circuit view expressed in *Frazier v. East Baton Rouge Parish School Board, supra.*

it seems clear that, at the very least, one must read the *Lombard* holding narrowly, and should not expand it beyond its precise facts. Thus, the answer to the question left open in *Lombard* is that res judicata should apply. The result in the present case is that plaintiffs' claim is barred.

### The Merits

■ It is clear that plaintiffs' claim under the Fifth and Fourteenth Amendments has no merit. There is no federal constitutional right to due process independent of a deprivation of a property or liberty interest. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The subdivision plan approved by the Mamaroneck Planning Board did not deprive plaintiffs of either property or liberty. *See Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Ellentuck v. Klein*, 570 F.2d 414 (2d Cir. 1978).

■ In any event, it must be said that the claim of lack of proper notice in the course of the Planning Board considerations is wholly without merit. It is perfectly obvious that plaintiffs were fully apprised that the Planning Board was considering the third access road near their property because of traffic and blasting considerations. Plaintiffs also knew that the ruling of the Board was based on these factors. Moreover, it was not a violation of due process for the Planning Board to fail to specify whether its ruling was deemed to be in compliance with Section 8E or a variance under Section M.

### Conclusion

For the foregoing reasons, upon reargument, the court adheres to its ruling granting defendants' motion for summary judgment and dismissing the case.

So ordered.