724 F.2d 321
 Jacinto VASQUEZ, Plaintiff-Appellant,
v.
John VAN LINDT, Individually and as Chairman of the New York
State Racing and Wagering Board, and Bertram Sarafan and
Joseph O'Dea, Individually and as Members of the New York
State Racing and Wagering Board, Defendants-Appellees.
 No. 395, Docket 83-7723.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 6, 1983.
Decided Dec. 20, 1983.
 
 Mark F. Pomerantz, New York City (Ronald P. Fischetti, New York City, Anne C. Feigus, New York City, of counsel), for plaintiff-appellant.
 William H. Mohr, Asst. Atty. Gen., of counsel, New York City (Robert Abrams, Atty. Gen., State of N.Y., Melvyn Leventhal, Deputy First Asst. Atty. Gen., and Brenda S. Spears, Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.
 Before CARDAMONE, PIERCE and PRATT, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 Plaintiff-Appellant Vasquez appeals from an order dated August 18, 1983, of the United States District Court for the Southern District of New York, Mary Johnson Lowe, Judge, denying Vasquez' motion for a preliminary injunction. The injunction sought would have stayed enforcement of an order of the New York State Racing and Wagering Board which suspended for one year Vasquez' license to work as a thoroughbred jockey. The district court granted a stay of the suspension to permit Vasquez to apply to this court for a stay pending appeal. On September 6, this court granted a further stay pending determination of this appeal.
 
 
 2
 For the reasons set forth below, we affirm the order denying a preliminary injunction, and we remand the case to the district court with directions to dismiss the complaint.
 
 I. BACKGROUND
 
 3
 Plaintiff-Appellant Jacinto Vasquez is a well-known and experienced thoroughbred racing jockey. During his twenty-three-year career as a jockey, he has ridden in over thirty-thousand races and has earned over $40,000,000 in prize money. For the past 22 years, Vasquez has been licensed as a jockey by the New York State Racing and Wagering Board ("Board") and by its predecessor, the New York State Racing Commission.
 
 
 4
 On April 12, 1982, the Board issued a "Notice of Hearing" requiring Vasquez to appear at a hearing to show cause why, based upon two charges, the Board should not suspend or revoke his jockey's license. The moving papers alleged that about eight years earlier, on August 2, 1974, Vasquez had approached fellow jockey Eddie Maple prior to a race at Saratoga Springs, New York, with an "offer, promise or suggestion of a bribe." The papers also alleged that Vasquez, around the same time as the supposed incident with Eddie Maple, had presented jockey Michael Hole with an "offer, promise or suggestion of a bribe."
 
 
 5
 The hearing began on April 29, 1982, before New York State Racing Commissioner Harry D. Snyder. Commissioner Snyder adjourned the matter to permit Vasquez to file motions. On May 12, 1982, prior to a hearing before the Commissioner on the substantive questions, Vasquez commenced an action in the United States District Court for the Southern District of New York alleging that the members of the Board, acting under color of state law, had conspired to deprive him of his constitutional rights in violation of 42 U.S.C. Sec. 1983 (Supp. V 1981). The complaint sought an order enjoining the defendants from proceeding with the hearings or from acting to revoke or suspend Vasquez' license.
 
 
 6
 By order dated May 21, 1982, the district judge refused Vasquez' request to enjoin the Board from continuing administrative proceedings against him. Instead, Judge Lowe placed the case on suspense status, noting that Vasquez could apply to re-activate the action upon determination by the state hearing officer of Vasquez' various motions to dismiss. Vasquez thereupon returned to the state administrative proceeding where he moved for disqualification of the Board members and for dismissal of all charges. By decision dated July 14, 1982, the hearing officer rejected most of Vasquez' contentions, including the claims that the Board members were biased, that the Board had violated Vasquez' right to due process by delaying the filing of charges, and that the Board's regulations prohibiting corrupt practices were unconstitutionally overbroad and vague. The hearing officer did dismiss the Board's charge that Vasquez had suggested a bribe to jockey Michael Hole. At that point, Vasquez did not take the opportunity, as set forth by Judge Lowe in the suspense order of May 21, 1982, to return to federal court.
 
 
 7
 On September 28, 1982, the hearing officer heard evidence from both sides on the remaining charge--that Vasquez had suggested a bribe to jockey Eddie Maple. The Board's principal witness at the hearing, Eddie Maple, stated that, during grand jury proceedings in 1979, he had testified that Vasquez had asked him if he would "take some money to hold my horse." On cross-examination by Vasquez' attorney, however, he stated that Vasquez had a reputation for joking and that he considered Vasquez' remark a "wisecrack." With respect to Maple's latter statement, the hearing officer noted that "Maple's testimony at the present hearing that he didn't know what Vasquez meant or that he didn't take him seriously has the hollow ring of an attempt to reconcile his Grand Jury testimony with his obligation under Board rules to report a bribe offer. Considering Maple's testimony as a whole, I find that he considered the conversation as a bribe offer."
 
 
 8
 The hearing officer rendered his report on November 15, 1982, finding that Vasquez had suggested a bribe to Maple and recommending the suspension of Vasquez' license as a jockey for one year. About three weeks later, on December 7, 1982, the Board adopted the findings and the recommendation of the hearing officer and ordered a one-year suspension of Vasquez' license, beginning December 15, 1982. Vasquez claims that neither he nor his attorney at that time knew of the hearing officer's ten-page report until the Board adopted it in its December 7 decision.
 
 
 9
 By petition dated December 9, 1982, Vasquez commenced an Article 78 proceeding in the New York County Supreme Court challenging the Board's suspension order. Pursuant to N.Y.Civ.Prac.L. Secs. 7803(4) and 7804(g) (McKinney 1981), the Article 78 proceeding was transferred to the Appellate Division, First Department.[1] By an order of the Appellate Division dated January 11, 1983, enforcement of the Board's suspension order was stayed pending disposition of the Article 78 proceeding.
 
 
 10
 On March 7, 1983, Vasquez submitted to the Appellate Division a forty-one page brief in support of his Article 78 petition. On May 20, 1983, Vasquez' attorney argued his case before the Appellate Division. By order dated May 31, 1983, the Appellate Division unanimously affirmed the Board's suspension order.
 
 
 11
 Vasquez then sought leave in the New York Court of Appeals to appeal the Appellate Division's affirmance of the Board's suspension order. The Board consented to a further stay of its order pending disposition by the Court of Appeals. On July 12, 1983, the Court of Appeals denied Vasquez' request for leave to appeal and awarded costs to the Board. Two days later, the Board issued a new order requiring that Vasquez' suspension commence on July 27, 1983.
 
 
 12
 On July 26, 1983, Vasquez obtained from the United States District Court for the Southern District of New York a temporary restraining order preventing the Board from enforcing its order pending a hearing before Judge Lowe on Vasquez' motion for a preliminary injunction. On August 8, 1983, Judge Lowe heard Vasquez' preliminary injunction motion. The Board argued that all of Vasquez' claims were barred by the Appellate Division's affirmance of the Board's findings and suspension order. Vasquez insisted that some of his claims had not been presented to and, hence, had not been ruled upon by the Appellate Division. He contended that these claims remained available to him and that he could present them in a 42 U.S.C. Sec. 1983 action pursuant to Second Circuit case law under Lombard v. Board of Education of New York, 502 F.2d 631 (2d Cir.1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975), and its progeny. See, e.g., Gargiul v. Tompkins, 704 F.2d 661 (2d Cir.1983). Vasquez also contended before Judge Lowe that he would suffer irreparable harm if the Board's order were not enjoined; that he was raising sufficiently serious questions going to the merits to make them a fair ground for litigation; and that the balance of hardships tipped in his favor. Therefore, he argued that he should receive preliminary relief. At the conclusion of the hearing, Judge Lowe declined to rule on the issue of whether Vasquez was precluded by principles of res judicata from pursuing a civil rights action in federal court. Rather, she held that given the "complex of factors that I have just enumerated," it was not likely that Vasquez would "succeed on the merits on a 1983 action." Thus, the district judge concluded that "[there did not exist] grounds for a preliminary injunction to issue against the order of the State Board." The district judge did grant Vasquez a stay pending application to this court for a stay pending appeal. By order dated September 6, 1983, this court granted the stay and placed the case on expedited appeal status.
 
 
 13
 On appeal, Vasquez argues that the district court erroneously concluded that the doctrine enunciated in Lombard was no longer authoritative, and "that Vasquez' claims in this Sec. 1983 action were thereby barred by res judicata." He contends that in federal court he is raising "two specific claims which ... had neither been raised nor decided previously." The first allegedly new argument is that "the grand jury testimony of Eddie Maple, even if properly considered by the hearing officer, could not constitutionally have supported the suspension order." The second claim is that Vasquez' "lack of opportunity to read and comment upon the hearing officer's recommendations prior to their adoption by the Board" violated his constitutional due process rights. Vasquez seeks to have us "remand the case to the district court to enable [him] to develop a complete factual record regarding his entitlement to injunctive relief."
 
 
 14
 Upon review, we find it unnecessary to address Vasquez' challenge vis-a-vis Lombard and its progeny. Contrary to Vasquez' assertion, the district judge did not hold that Lombard "was no longer authoritative." Judge Lowe specifically stated, "I hardly need [see] why I have to say Lombardis dead ... since it is not likely that you are going to succeed on the merits on a 1983 action." We also need not remand to the district court, as requested by Vasquez, "to develop a complete factual record regarding his entitlement to injunctive relief." After a review of the record, we find that the two allegedly new claims now presented by Vasquez were actually litigated in the state Article 78 proceeding. Consequently, we conclude that Vasquez is barred from relitigating these claims in a section 1983 federal action. For this reason, we remand the case to the district court only for the purpose of dismissing the complaint.
 
 II. DISCUSSION
 
 15
 Under traditional res judicata principles, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); Winters v. Lavine, 574 F.2d 46, 55-56 (2d Cir.1978). Federal courts are required under 28 U.S.C. Sec. 1738[2] "to give full faith and credit to judgments entered by state courts of competent jurisdiction.... The federal court presented with a state court judgment is required to give that judgment the same force and effect as it has in the state in which it was rendered." Mitchell v. National Broadcasting Co., 553 F.2d 265, 274 (2d Cir.1977) (citations omitted). The applicable state law herein would be the law of New York, which follows the "traditional doctrine of res judicata ...." Winters, 574 F.2d at 55-56 (collecting cases).
 
 
 16
 The Second Circuit, however, has not applied traditional res judicata principles in section 1983 actions. Rather, we have held that "a prior state court proceeding does not bar federal court consideration of constitutional claims not actually litigated and determined in that proceeding." Gargiul, 704 F.2d at 666.
 
 
 17
 Contrary to Vasquez' contention, we need not decide whether his section 1983 action is subject to traditional New York res judicata principles or to the less harsh rule developed under the Lombard-Gargiul line of cases, since Vasquez' section 1983 action is barred regardless of the approach we follow. See Friarton Estates Corp. v. The City of New York, 681 F.2d 150, 158-59 (2d Cir.1982); Winters, 574 F.2d at 55.
 
 
 18
 Vasquez' first section 1983 claim is that the hearing officer's decision, based on Eddie Maple's testimony before the 1979 grand jury, was not supported by "substantial evidence." This claim, he argues, differs from the substantial evidence argument which he raised before the Appellate Division in the Article 78 proceeding. The latter argument, he states, was not that there was insufficient evidence in support of the decision; rather, it was that Maple's testimony should not have been considered and that, therefore, there was insufficient evidence in support of the decision. This distinction, however, is meritless. In both proceedings, the essence of the argument was that the hearing officer's decision was not supported by substantial evidence. Moreover, the reason that the Article 78 proceeding was transferred from the New York County Supreme Court to the Appellate Division is that under New York's Civil Practice Laws and Rules such a transfer is required where one of the issues raised by the petition is whether an administrative finding "is, on the entire record, supported by substantial evidence."[3] Consequently, in affirming the Board's decision, the Appellate Division clearly would have considered whether there was sufficient evidence to support the outcome.
 
 
 19
 Vasquez' second section 1983 claim is what he has termed his "summation" argument; that is, the contention that he was denied the opportunity to "see and comment upon the report of the hearing officer prior to its adoption by the Board." In his argument before Judge Lowe, Vasquez' attorney did admit that "it was mentioned in a different version in one paragraph of the verified Article 78 petition."[4] He contended, however, "that there was not a single word addressed to that issue in any of the briefs filed by Vasquez or by the Board."
 
 
 20
 The record belies this claim. The brief submitted by Vasquez in the Article 78 proceeding does argue, both by clear implication and expressly, that Vasquez had a due process right, not accorded him by the Board, to see and comment upon the report of the hearing officer prior to the Board's adoption of the findings and decision. In summarizing the facts, Vasquez' Article 78 brief clearly states that he was deprived of the opportunity to review the hearing officer's decision or to appear before the Board (the brief argues that Vasquez did not even have notice of the hearing officer's decision until the Board adopted it).[5] In the body of the brief, Vasquez argues that, under the circumstances, the Board, an administrative agency, was required by the Due Process Clause of the Fourteenth Amendment to give him an opportunity to be heard and to review and confront the evidence presented against him. Prior to discussing the substantial evidence claim, Vasquez' Article 78 brief argues as follows:
 
 
 21
 The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees every citizen due process of law. Essentially, the Due Process Clause prohibits the government from depriving a person of his rights without due process of law.
 
 
 22
 Procedural Due Process rules were meant to protect persons not from a deprivation, but from the mistaken or unjustified deprivation....
 
 
 23
 Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978).
 
 
 24
 Thus they impose constraints on government action. Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976).
 
 
 25
 Once notified of proposed governmental action, the interested party is entitled to be heard.
 
 
 26
 The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to insure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment--to minimize substantively unfair or mistaken deprivations of property.... so be it, the prohibition against deprivation of property without due process of law reflects the high value, imbedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of government interference. See, Lynch v. Household Finance Corp., 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424. Fuentes v. Shevin, 407 U.S. 67, 80-81, 92 S.Ct. 1983, 1994-95, 32 L.Ed.2d 556 (1972) (quoting Baldwin v. Hale, 68 U.S. 223, 233, 1 Wall. 223, 233, 17 L.Ed. 531 (1861))....
 
 
 27
 Due process requires a fair hearing before a fair tribunal. In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). This requirement applies to all adjudicatory proceedings beforee [sic] administrative agencies. Gibson v. Berryhill, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973).
 
 
 28
 Given that, as discussed above, earlier in the brief Vasquez stated that he did not have an opportunity to appear before the Board, we must read this language to contend that the Board should have provided Vasquez with the opportunity to confront the evidence presented against him and to be heard. Thus, Vasquez' argument amounts to much more than a "mere mention of 'due process' ... [, which would not be] the equivalent of raising a due process constitutional claim [in the state court]." Ornstein v. Regan, 574 F.2d 115, 118 (2d Cir.1978); Newman v. Board of Education of New York, 508 F.2d 277, 278 (2d Cir.) (Appellant's due process claim was not raised in state court where there were no "allegation[s], elaborations, or citations of authority ... [accompanying] the sole mention of the phrase 'due process' in appellant's entire twelve-page petition."), cert. denied, 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975).
 
 
 29
 In short, the language quoted above from Vasquez' state court brief clearly indicates that the "constitutional issue has been actually raised in the state court, [and hence] the litigant has made his choice and may not relitigate that issue in a federal court in a Section 1983 action." Ornstein, 574 F.2d at 117 (emphasis in original). In view of the foregoing, the Appellate Division's denial of Vasquez' Article 78 petition, and its affirmance of the Board's ruling, albeit by summary disposition, indicates that Vasquez' due process claim was actually litigated and determined by the state court. See Friarton Estates, 681 F.2d at 159 ("Although the opinion of the Special Term may not constitute an altogether satisfying answer to plaintiffs' claims, the Appellate Division wrote none, and the Court of Appeals simply branded plaintiffs' constitutional claim as insubstantial, the record leaves no room for doubt that the claims ... were fully presented to the New York courts, and that those courts entertained them but denied them on the merits."). Hence, either under traditional res judicata principles or under the Lombard-Gargiul line of cases, Vasquez is barred from relitigating his claim in federal court.
 
 
 30
 We affirm the district court's order denying the preliminary injunction and we remand the case to the district court with directions to dismiss the complaint.[6]
 
 
 
 [1]
 N.Y.Civ.Prac.L. Sec. 7803 provides, in pertinent part:
 The only questions that may be raised in a proceeding under this article are:
 
 
 [4]
 whether a determination made as a result of a hearing held, and at which evidence was taken pursuant to direction by law is, on the entire record, supported by substantial evidence
 N.Y.Civ.Prac.L. Sec. 7804 provides, in pertinent part:
 (b) A proceeding under this article shall be brought in the supreme court, special term ....
 (g) Where an issue specified in question four of section 7803 is ... raised, the court shall make an order directing that the proceeding be transferred for disposition to a term of the appellate division .... When the proceeding comes before it ... by ... transfer, the appellate division shall dispose of all issues in the proceeding, or, if the papers are insufficient, it may remit the proceeding.
 
 
 [2]
 28 U.S.C. Sec. 1738 provides, in pertinent part:
 The ... judicial proceedings of any court of any ... State ... shall be proved or admitted in other courts within the United States
 ....
 Such ... judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.
 
 
 [3]
 See supra note 1 and accompanying text
 
 
 [4]
 Vasquez' Article 78 petition states that "[t]he Board's failure to provide petitioner with a copy of the hearing officer's report prior to their determination violated petitioner's due process rights ...."
 
 
 [5]
 Vasquez stated in his Article 78 brief that he "had no notice of the Hearing Officer's decision until December 7, 1982 when the Board issued its Order adopting the decision and suspending Vasquez' license for a period of one year." (emphasis in original). Later in his brief he stated that "[e]x parte action by the Board denied Vasquez a hearing on ... [the issue of whether the Board should disqualify itself], thereby once again depriving him of his due process rights." This is quite sufficient to establish that Vasquez presented to the state court his factual claim that he did not have an opportunity to review the hearing officer's decision or to argue before the Board
 
 
 [6]
 See Friarton Estates, 681 F.2d at 161; CES Publishing Corp. v. St. Regis Publications, Inc., 531 F.2d 11, 15 (2d Cir.1975)