**Francisco HERNANDEZ JIMENEZ,
Plaintiff, Appellant,**

v.

**Astol CALERO TOLEDO et al.,
Defendants, Appellees.**

**No. 77–1089.**

United States Court of Appeals,
First Circuit.

Argued Feb. 6, 1978.

Decided June 1, 1978.

Jesus Hernandez Sanchez, Rio Piedras, P. R., with whom Antonio Hernandez Sanchez, San Juan, P. R., was on brief, for appellant.

Candita R. Orlandi, Asst. Sol. Gen., San Juan, P. R., with whom Hector A. Colon Cruz, Sol. Gen., San Juan, P. R., was on brief for appellees.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Francisco Hernandez Jimenez filed his complaint on April 10, 1975, charging Astol Calero Toledo, Superintendent of the Puerto Rico police, with dismissing him from the department without a prior hearing. The complaint also charged Calero and members of the commission that reviewed and upheld Hernandez's discharge with conspiring to deprive him of his position for political reasons. Hernandez sought reinstatement and

damages. On November 14, 1975, he amended his complaint to include two new defendants, local politicians who, he claimed, joined in the conspiracy to deprive him of his post. After some documentary evidence had been submitted but before trial, the district court dismissed the complaint, ruling that res judicata barred the suit against the original defendants and that the addition of new defendants by the amended complaint was time barred. Hernandez appeals from the dismissal of his complaint.

At the time of his dismissal Hernandez was a lieutenant in the Puerto Rico police. On the night of March 18, 1973, while off duty, a vehicle he was driving collided with another automobile. According to the police report of the accident, Hernandez apparently had been drinking and was driving on the wrong side of the road. The passengers got out of their respective cars and argued over the accident for about half an hour. The conversation became heated, and at some point Hernandez shot the occupants of the other car with his service revolver and then fled. One of the victims died from the gunshot wounds; the other was seriously injured but survived. Hernandez was tried for attempted murder and second degree murder but was acquitted by a jury, apparently on the ground of self defense.

After an administrative investigation of the shooting incident, Calero on April 17, 1973 sent Hernandez a letter dismissing him from the police force. The letter cited departmental regulations relating to negligent conduct, improper use of firearms, physical abuse of civilians, and illegal behavior and informed Hernandez of his right to appeal the decision to the Investigation, Processing and Appeals Commission. The Commission upheld the dismissal on June 26, 1974. Hernandez then sought review of the Commission's action in the Puerto Rico Superior Court, but his petition was dismissed because the statutory thirty day appeal period had elapsed since the Commission decision. Hernandez appealed the dismissal of his petition to the Supreme Court of Puerto Rico but was denied certiorari.

In his complaint and accompanying affidavits, Hernandez claims that his two victims and the three eyewitnesses to the shooting were attacking him with steel bars, forcing him to use his gun. He alleges that Calero admitted to him the investigation and discharge were politically motivated, as leaders of the Popular Democratic Party, to which Calero belonged, wished to harm Hernandez, a member of the New Progressive Party. He contends that after the Commission upheld his discharge, he discovered that Juan Nieves, the stepfather of the boy he killed, brought pressure to bear on Ramon Amaes Rios, the mayor of Rincon, to punish Hernandez, and that Amaes in turn pressured Calero and the Commission. He alleges that Calero, the Commission members, Nieves and Amaes, all being Popular Democrats, conspired to remove him from the force solely because of his political affiliation. He claims to have been unable to include Nieves and Amaes in his original complaint because he was then unaware of their involvement in the conspiracy.

The district court in dismissing the complaint ruled that Calero and the Commission members were all parties to Hernandez's review petition in the superior court, either directly or through their privies, and that the political discrimination claim brought here could and should have been raised in the previous suit. The court therefore held that res judicata barred this subsequent suit, citing our opinion in *Lovely v. Laliberte*, 498 F.2d 1261 (1st Cir.), *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). Nieves and Amaes were not parties to the superior court suit, but the district court ruled that inasmuch as the amended complaint adding them as defendants was filed more than a year after Hernandez's discharge, the statute of limitations had run as to them.

In *Lovely* we held that principles of res judicata barred a subsequent suit in federal court alleging constitutional deprivations even though the constitutional claims were not raised in the prior state court suit. *Id.*

at 1263. This was so because " '[a] judgment estops not only as every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented . . .' " *Id.* (citing *Cromwell v. County of Sac*, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1877)). There the state court had heard arguments on and decided the substantive questions of an eviction action. In the case at bar, however, the Commonwealth court reached only the issue of the time bar. Plaintiff was unable to assert any ground of recovery to that court because the court did not consider the petition for review on its merits. This case is therefore governed by the traditional rule of res judicata that "[w]here a valid and final personal judgment not on the merits is rendered in favor of the defendant, the plaintiff is not thereby precluded from thereafter maintaining an action on the original cause of action and the judgment is conclusive only as to what is actually decided." Restatement of Judgments § 49. *See Darnell v. Lloyd*, 395 F.Supp. 1210 (D.Conn.1975). Consequently res judicata could not have barred Hernandez's present action.

Because this action is not so barred, it must be remanded for further proceedings. It is clear that some but not all of the claims stated in the complaint are not time barred as to the original defendants. As the district court ruled, the applicable statute of limitations to this suit is Puerto Rico's one-year rule for torts. *Ramirez de Arellano v. Alvarez de Choudens*, 575 F.2d 315 (1st Cir. 1978). In the context of a continuing conspiracy to violate civil rights, the statute of limitations runs separately from each action constituting a civil

rights violation that causes actual damage to the plaintiff. *Kadar Corp. v. Milbury*, 549 F.2d 230, 234–35 (1st Cir. 1977); *see Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Momand v. Universal Film Exchanges*, 172 F.2d 37, 49 (1st Cir.), *cert. denied*, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118 (1949).[1] In this case, the period of limitation had run by the time the complaint was filed as to claims arising from plaintiff's dismissal, but the complaint was timely as to claims stemming from the affirmance of his discharge by the Commission. On remand the district court should dismiss those portions of the complaint seeking recovery for plaintiff's initial discharge, but the claims based upon the later actions are not time barred, and may go forward to the extent otherwise maintainable.

As for the defendants brought in by the amended complaint, it is open to plaintiff to prove, if he can, that these parties fraudulently concealed from plaintiff their participation in the alleged conspiracy to affirm his dismissal.[2] If so, tolling principles contained in the law of the Commonwealth might indicate that the statute did not begin to run until such time when plaintiff should or could have discovered the conspiracy. Alternatively, a principle of federal law might require tolling if fraudulent concealment is in fact made out. *See Briley v. California*, 564 F.2d 849, 855 (9th Cir. 1977); *cf. Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Therefore on remand the district court will have to determine whether the action against the added defendants can go forward because the statute of limitations did

1. We recognize that some courts have spoken of the "last overt act" of a civil rights conspiracy as the time from which the statute begins to run, *e. g., Crosswhite v. Brown*, 424 F.2d 495 (10th Cir. 1970), but do not believe those courts meant to depart from the traditional rule in civil conspiracies that the mere fact of a conspiracy does not toll the statute of limitations with respect to earlier clear-cut violations of rights that have not been concealed from the

plaintiff. If a plaintiff were unable to discover the earlier violations because of fraudulent concealment the statute of limitations could be tolled; conversely, "overt acts" in a conspiracy that fall short of being separate violations of rights would not start the statute running.

2. This claim is not open with regard to Calero and the Commission members because their participation in the alleged conspiracy was known to plaintiff.

not begin to run until sometime after November 14, 1974.[3]

*The judgment of the district court dismissing the complaint is reversed.*

See also, D.C., 416 F.Supp. 272; D.C., 416 F.Supp. 276.

3. On remand plaintiff will also be free to raise the issue of whether the amended complaint "relates back" to the original complaint so as to place the added defendants in the same position as the others for statute of limitations purposes. *See* Fed.R.Civ.P. 15(c); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1498 (1971).