Cassius C. FERGUSON, a/k/a C. C. Ferguson, Plaintiff-Appellant, Cross-Appellee,

v.

WINN PARISH POLICE JURY et al., Defendants-Appellees, Cross-Appellants,

v.

Elijah MALLORY, Intervenor-Appellant,

United States of America, Intervenor-Appellant.

No. 76–4159.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1979.

Bobby L. Culpepper, Jonesboro, La., for Ferguson and Mallory.

Frank D. Allen, Jr., Atty., Appellate Section Civil Rights Div., Dept. of Justice, Judith E. Wolf, Atty., Drew S. Days, III, Asst. Atty. Gen., John Hoyle, Atty., Dept. of Justice, Washington, D. C., for the U. S.

Alfred B. Shapiro, Alexandria, La., for Winn Parish Police Jury.

John F. Ward, Jr., Robert V. McAnelly, Baton Rouge, La., for School Bd. and Collins.

Before THORNBERRY, GODBOLD and HILL, Circuit Judges.

PER CURIAM:

This reapportionment case originally presented appeals from the district court's adoption of reapportionment plans for the Winn Parish, Louisiana, Police Jury and the Winn Parish School Board. The parties to the police jury appeal have subsequently reached agreement on a plan acceptable to all, and jointly have moved that we vacate the judgment insofar as it relates to the police jury and remand the case to the district court for consideration of the plan agreed upon. We grant their motion and consider here only the districting for school board elections.

Plaintiffs, the United States and black voters in Winn Parish, initially challenged a 1970 court-ordered reapportionment plan for the election of school board members for Winn Parish. The district court held that the 1970 plan was acceptable under Fourteenth Amendment one-man, one-vote requirements, but that the 1970 districts offended the constitutional proscription against racial discrimination because the use of a five-person multi-member district for the City of Winnfield caused a dilution of the black vote. The district court then implemented an alternative plan, which had been submitted by the school board. This plan divided Winnfield into five single-member districts and the rural areas of the parish into three single-member districts and one two-person multi-member district. The court of appeals reversed because the 37.71% population variance between two of the rural districts was violative of one-man, one-vote requirements. We remanded the case to the district court with instructions to devise a plan that would result in "acceptable total variations in population among school board districts." *Ferguson v. Winn Parish Police Jury*, 528 F.2d 592, 595 (CA5, 1976).

On remand the special master who, on behalf of the school board, had drawn up the plan rejected by the court of appeals was engaged by the district court to reexamine his plan and submit a plan with acceptable population variances. The special master submitted a revised plan in which the five school board districts covering Winnfield were the same as in the previous plan and in which the rural districts had been redrawn to obtain low population variations.

The United States and private plaintiffs filed briefs opposing the master's plan, raising for the first time the contention that the five city districts impermissibly diluted the black vote by "over-concentrating" it.[1]

---

1. No one-man, one-vote issues have been raised on remand or on this appeal.

Winnfield is approximately 45% black. The plan creates one district in which 100% of the population is black and another district which is 49% black. In the remaining three city districts the percentage of blacks in the population is 27%, 0% and 27%.[2] Thus, in a city with a 45% black population, if bloc voting occurred there would be only one black person among the five school board members elected from the city. Plaintiffs argued that the adoption of this plan would be unconstitutional and an abuse of discretion by the district court. The United States submitted an alternative plan under which there would be two majority black districts out of five within the city, one with 78% black population and one with 73%. No district would be 100% white or 100% black under this plan.[3]

The district judge refused to consider the dilution arguments made by plaintiffs. His grounds appear to be two: (1) the court of appeals had affirmed the previous plan with respect to the districts lying within Winnfield and (2) the court of appeals had affirmed the previous plan with respect to all constitutional challenges except those premised on population variations among districts too great to be acceptable under the Fourteenth Amendment.[4] Thus he concluded that he was not free to alter the districts within the city. Since the special master's revised plan corrected the excessive population variations that had existed in the rural districts, the district judge ordered this plan implemented. Plaintiffs appeal. We conclude that the district judge erred in refusing to consider the plaintiffs'

over-concentration argument and remand for consideration of this argument and appropriate findings.

■ We turn first to the district judge's conclusion that he was not free to alter the electoral districts within the city. The phrasing of the district judge's opinion suggests that he may have concluded that on the previous appeal the court of appeals drew a distinction between the urban and rural districts in Winn Parish and "affirmed" the configuration of the city districts. Careful examination of the previous opinion shows that the court did not draw the distinction between urban and rural districts that the district judge drew and did not order the district court to leave the city districts intact. In fact at one point the opinion intimates that it might be a good idea to consolidate School Board Districts 5 (a city district) and 10 (a rural district). *See* 528 F.2d at 598.

■■ There is also a suggestion in the district judge's opinion that the court of appeals had held that there was no constitutional flaw in the school board districting plan other than the unacceptably large population variation among districts. In fact, as far as appears from the opinion of the court of appeals, the panel did not even consider any constitutional challenges to the school board districting other than the one-man, one-vote challenge discussed. Nowhere in the opinion is there a holding that the city districts were satisfactory under Fifteenth Amendment criteria.[5] Moreover,

2. These numbers are drawn from a 1976 special census.

3. Plaintiffs also submitted other alternative plans that divided Winn Parish into 12 school board districts. Few details about these plans are available in the briefs and the record.

4. The district judge's discussion of the plaintiffs' over-concentration argument reads in relevant part:
   "The United States . . . has submitted [an] . . . alternate plan which would revise the districts 1–5 within the City of Winnfield *which have already been affirmed* by the Court of Appeals and elections held in accordance therewith . . . would increase the black percentage within one of

those districts. While the court recognizes that this alternate plan might be, perhaps, more acceptable from a Fifteenth Amendment standpoint than the plan affirmed by the Court of Appeals, we cannot nullify a plan *which has been found to be constitutionally acceptable.*"
(Emphasis added.)

5. The school board cites to a number of references that the panel made, in discussing the police jury aspect of the case, to the fact that the district court had replaced the multi-member school board district in the city with five single-member districts because of Fifteenth Amendment considerations. The previous panel's recitation of this fact cannot be construed as a holding that the five city districts were

in choosing a court-ordered plan, there has been no consideration of the court's responsibility of insuring that it does not have the effect of diluting a minority's votes or of continuing such a dilution. The district court erred in thinking itself bound by the previous appeal, and it must consider the plaintiffs' contentions.[6] We must therefore reverse the judgment of the district court insofar as it relates to the school board and remand the case to the district court for consideration of the plaintiffs' arguments and for the taking of additional evidence if the district court considers it appropriate.

VACATED in part, REVERSED in part, and REMANDED to the district court for further proceedings.

safe from any and all future challenges based on the Fifteenth Amendment. Racial discrimination takes many forms, and the mere absence of racially discriminatory multi-member districts does not mean that a plan is necessarily nondiscriminatory.

6. The school board argues that the plaintiffs should be estopped from raising their over-concentration argument now because they failed to do so when they had an opportunity on the earlier appeal. Regardless of whether the plaintiffs should have raised their over-concentration contention earlier in the history of this case, their failure does not bar them from raising it now. Principles of res judicata are not strictly applied in voting rights cases because their application would unfairly deny the members of a large class fundamental constitutional rights merely because counsel representing the named plaintiffs in the case made a legal error. *See Parnell v. Rapides Parish School Board,* 563 F.2d 180, 185 (CA5, 1977).