**Marjorie HARRINGTON, Plaintiff,**

v.

**INHABITANTS OF the TOWN OF GARLAND, MAINE, Defendant.**

**Civ. No. 78–19–B.**

United States District Court,
D. Maine.

Dec. 9, 1982.

Bernard R. Cratty, Cratty & Cratty, Waterville, Me., for plaintiff.

Lawrence E. Merrill, Anderson, Merrill, Norton & Relyea, Bangor, Me., for defendant.

### MEMORANDUM DECISION AND ORDER

CYR, District Judge.

The present action under section 1983 challenges the constitutionality of a town

tax lien foreclosure against real property jointly owned by plaintiff and her husband.[1] The defendant [Town] moves to dismiss on the ground that all claims asserted by the plaintiff in the present action are precluded under the doctrine of res judicata.[2]

## I

### THE STATE COURT ACTION

The plaintiff and her husband brought a state court action in 1975 against the Town and others to quiet title to certain parcels of land in Garland, including the parcels involved in the present action. Their state court complaint alleged "[t]hat the Town of Garland claims title for unpaid taxes against the plaintiffs ... but that the plaintiffs claim they have paid said taxes and that said tax liens should not be encumberances (sic) against their property." The Town counterclaimed for confirmation of its title to the parcels in question, on the strength of a tax lien foreclosure undertaken pursuant to 36 M.R.S.A. §§ 942–946 (1978).[3] At trial the state court plaintiffs introduced evidence that plaintiff's husband had paid $1,400 to the Board of Selectmen of the Town of Garland on an alleged understanding that these monies would be applied toward the purchase price of certain unrelated tax-acquired property of the Town *and* toward plaintiffs' unpaid tax ob-

ligation to the Town on the real estate involved in the present action. The monies were not applied toward the unpaid taxes, however, and the Town's tax liens ripened into title. The state trial court found that the evidence of an oral agreement for the application of the $1,400 toward unpaid taxes was "far from convincing," and, in any event, that "[p]laintiff's reliance upon the selectmen is misplaced. The treasurer and tax collector was not a party to the discussion." [State Trial Court Opinion and Order of July 28, 1976.] The state trial court found for the Town and dismissed the complaint, with prejudice, thereby confirming the Town as the owner in fee simple of the real estate which is the subject of the present action. The state trial court denied a motion for new trial.

On appeal to the Maine Supreme Judicial Court the plaintiffs raised for the first time the constitutional challenge upon which the instant action is predicated. *See Harrington v. Inhabitants of the Town of Garland,* 381 A.2d 639, 642 (Me.1978). The Law Court refused to consider the constitutional claim for failure to raise it before the trial court, *id.* at 642–43, because the trial court had not been afforded the opportunity to make critical factual findings. *Id.* The plaintiffs neither sought further appellate review nor requested extraordinary relief from the state trial court.[4]

---

**1.** The defendant argues that 28 U.S.C. § 1341 precludes the exercise of jurisdiction in this matter. Section 1341 prohibits federal district courts from enjoining the "assessment, levy or collection of any tax under state law." But plaintiff does not seek to enjoin the assessment or collection of a tax, rather she seeks *damages* for an allegedly unconstitutional deprivation of property without due process.

Although the complaint does not specifically invoke the jurisdiction conferred upon this Court by 28 U.S.C. § 1343, it alleges a cognizable claim that the defendant, acting under color of state law, violated the constitutional rights of the plaintiff. *See Glodgett v. Betit,* 368 F.Supp. 211, 215–16 (D.Vt.), *aff'd,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1973).

**2.** The Town asserted in its answer that "the questions raised by the Plaintiff's Complaint have been determined by the Supreme Judicial Court of the State of Maine," referring to *Harrington v. Inhabitants of the Town of Garland,*

381 A.2d 639 (Me.1978). On June 14, 1982, the Town moved to dismiss the present action on the basis of the prior state court judgment. Since the parties later submitted various documents relating to the state court judgment, which have not been excluded by the Court, the Town's motion is treated as one for summary judgment. *See* Fed.R.Civ.P. 12(c) & 56.

**3.** The relevant tax liens were filed on May 18, 1970 and April 30, 1971. An 18-month redemption period is prescribed by 36 M.R.S.A. § 943.

**4.** There is no indication that the plaintiff sought extraordinary relief in the state trial court pursuant to Me.R.Civ.P. 60(b)(6), following the affirmance by the Law Court of the state court judgment. *Cf. Reville v. Reville,* 370 A.2d 249 (Me.1977) [affirming denial of such a motion due to movant's failure "to take legal steps to protect his interest in the original litigation"]. Nor does it appear that the plaintiff sought to invoke the power of the state trial court "to

## II

## RES JUDICATA

Since it is clear that these constitutional claims were neither raised nor decided in the earlier action before the state trial court, the motion for summary judgment presents the narrow question discussed, but not decided, by the Supreme Court in *Allen v. McCurry,* 449 U.S. 90, 97 n. 10, 101 S.Ct. 411, 416 n. 10, 66 L.Ed.2d 308 (1980). *Allen v. McCurry* involved a section 1983 action for damages resulting from an assertedly unconstitutional search and seizure. The federal action under section 1983 followed a state court criminal proceeding in which fourth and fourteenth amendment challenges to the admissibility of evidence seized in the course of the search had been raised unsuccessfully by the defendant. The United States Supreme Court held that the plaintiff in the section 1983 action was collaterally estopped from raising his constitutional claims by reason of the earlier state court ruling upholding the constitutionality of the search and seizure. 449 U.S. at 105, 101 S.Ct. at 420.

In its discussion of the applicability of the doctrines of res judicata and collateral estoppel in actions brought under section 1983, the Court stated that "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or

entertain an independent action to relieve a party from judgment," *see* Me.R.Civ.P. 60(b) (third sentence). *See Hackett v. Eaton,* 389 A.2d 848 (Me.1978); *Allen v. Cole Realty, Inc.,* 325 A.2d 19, 24–25 (Me.1974).

The availability of United States Supreme Court review of the state court judgment would appear to have been extremely doubtful in light of plaintiff's failure to assert her constitutional claims in the state trial court in accordance with the procedural requirements of Maine law. *See Michigan v. Tyler,* 436 U.S. 499, 512 n. 7, 98 S.Ct. 1942, 1951 n. 7, 56 L.Ed.2d 486 (1978); *Lombard v. Board of Education,* 502 F.2d 631, 636 (2d Cir.1974).

5. Title 28 U.S.C. § 1738, the so-called full faith and credit statute, provides, in relevant part, that "[t]he ... judicial proceedings of any court of any State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such

*could have been* raised in that action." *Id.* at 94, 101 S.Ct. at 414 (*emphasis added*). The Court further explained that federal courts have generally accorded res judicata and collateral estoppel effect to state court judgments because these doctrines "not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as the bulwark of the federal system," *id.* at 95–96, 101 S.Ct. at 415.

More to the present point, the Court said:

The Court has never directly decided whether the rules of res judicata and collateral estoppel are generally applicable to § 1983 actions. But in *Preiser v. Rodriguez,* 411 U.S. 475, 497 [93 S.Ct. 1827, 1840, 36 L.Ed.2d 439], the Court noted with implicit approval the view of other federal courts that res judicata principles fully apply to civil rights suits brought under that statute.... [A]nd nothing in the language of § 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U.S.C. § 1738....

*Id.* 449 U.S. at 96–98, 101 S.Ct. at 416.[5]

Notwithstanding its sweeping dicta as to the preclusive effect of state court judgments in subsequent section 1983 actions,

State...." In its original form before the enactment of § 1983, § 1738 required that "all federal courts give preclusive effect to state-court judgments whenever the courts of the state from which the judgment emerged would do so," 449 U.S. at 96, 101 S.Ct. at 415. The legislative history of § 1983 was thus considered by the *Allen* Court as buttressing the view that congressional intent and the policies underlying the doctrines of res judicata and collateral estoppel require that federal courts give preclusive effect to state court judgments in federal actions, including § 1983 actions, *id.* at 98–99, 101 S.Ct. at 417. *Cf. Kremer v. Chemical Construction Corp.,* —— U.S. ——, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982) [§ 1738 and state preclusion principles bar federal court Title VII action following state court affirmance of adverse administrative ruling in employment discrimination case].

the *Allen* Court expressly declined to decide whether a federal constitutional issue, which could have been, but was not, raised in a state court action, can be litigated in a later section 1983 action in federal court.[6]

The First Circuit has applied res judicata and collateral estoppel to bar federal actions under section 1983 where the constitutional claims had been raised and decided, *Diaz-Buxo v. Trias Monge*, 593 F.2d 153 (1st Cir.1979); *Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103 (1st Cir.1978), or could have been raised, *Ramirez Pluguez v. Cole*, 571 F.2d 70 (1st Cir.1978); *Lovely v. Laliberte*, 498 F.2d 1261, 1263 (1st Cir.), *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974), in earlier state court actions based on the same cause of action. *See also Manego v. Cape Cod Five Cents Savings Bank*, 692 F.2d 174, at 177 n. 2 (1st Cir.1982) (*dictum*); *Landrigan v. City of Warwick*, 628 F.2d 736, 740 (1st Cir.1980); *Fernandez v. Trias Monge*, 586 F.2d 848, 854 (1st Cir.1978); *Hernandez Jimenez v. Calero Toledo*, 576 F.2d 402, 403–04 (1st Cir.1978); *Griffin v. Burns*, 570 F.2d 1065, 1070–71 (1st Cir.1978).

In *Lovely v. Laliberte*, 498 F.2d 1261 (1st Cir.1974), the First Circuit held that the plaintiff, who had been evicted pursuant to an earlier state court judgment, was barred from asserting in a later federal court action under section 1983 that his first amendment rights had been violated by the state court eviction proceedings. Although the plaintiff had not raised his first amendment claim in the state court proceedings, he could have done so. *Id.* at 1262.

> Res judicata precludes even 'perfect defenses ... of which no proof was offered.... [A] judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, ...'

*Id.* at 1263, *quoting Cromwell v. County of Sac*, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1877).

The First Circuit has held that res judicata bars later litigation of a section 1983

---

**6.** A very few courts have suggested that the normal rules of claim preclusion [as opposed to issue preclusion] should not apply in § 1983 suits in one peculiar circumstance: Where a § 1983 plaintiff seeks to litigate in federal court a federal issue which he could have raised but did not raise in an earlier state-court suit against the same adverse party.... These cases present a narrow question not now before us, and we intimate no view as to whether they are correctly decided.

449 U.S. at 97 n. 10, 101 S.Ct. at 416 n. 10 (citation omitted).

The rule mentioned by the Court in *Allen* was enunciated by the Second Circuit in *Lombard v. Board of Education*, 502 F.2d 631 (2d Cir.1974), *cert. denied*, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975). Lombard brought a § 1983 action following adverse rulings in two state court actions challenging the termination of his employment. In the § 1983 action Lombard raised for the first time the claim that he had been denied a hearing in violation of his right to due process. The Second Circuit declined to preclude the constitutional claim because it was of the opinion that: (1) § 1983 creates a supplementary remedy not requiring state exhaustion, *id.* at 635; (2) plaintiff should be allowed to bring state law claims in state court and related federal constitutional claims in federal court, *id.* at 635–36; and (3) inadvertent omission of federal constitutional claims in the state court action could foreclose even Su-

preme Court review of the state court decision, *id.* at 636. The *Lombard* rule has been reaffirmed by the Second Circuit since *Allen v. McCurry, supra, see, e.g., Grossman v. Axelrod*, 646 F.2d 768, 770 (2d Cir.1981), but a federal district court within the Second Circuit has questioned the viability of the *Lombard* rule in light of *Allen, see Sachetti v. Blair*, 536 F.Supp. 636, 638–40 (S.D.N.Y.1982). According to one respected commentator—

> The Second Circuit refusal to apply claim preclusion seems inconsistent with the *Allen* opinion in several ways. The full faith and credit statute [28 U.S.C. 1738] applies to claim preclusion as well as issue preclusion. There is no more apparent reason to find special rules of claim preclusion in the legislative history of § 1983 than to find special rules as to issue preclusion. And freedom to go to federal court in defiance of state claim preclusion rules and at the expense of orderly state procedure can be justified most easily by relying on propositions rejected by the [*Allen*] Court—that state courts cannot be trusted to adjudicate federal rights, or that every person asserting a federal right should have an opportunity to advance it in federal court.

18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4471, at 719–20 (1981).

constitutional claim arising out of "substantially the same facts" as an earlier state court action in which the federal constitutional claim was not, but could have been, raised. *Ramirez Pluguez v. Cole,* 571 F.2d 70, 71 (1st Cir.1978). *See also Brown v. St. Louis Police Department,* 691 F.2d 393 (8th Cir.1982); *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345, 1351 (9th Cir.1981); *Scroggin v. Schrunk,* 522 F.2d 436, 437 (9th Cir.), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1975); *Spence v. Latting,* 512 F.2d 93, 98 (10th Cir.), *cert. denied,* 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975). *Cf. Almon v. Sandlin,* 603 F.2d 503, 506 (5th Cir.1979) [§ 1983 due process claim "waived" by failure to raise it in state court action to quiet title].

■ The First Circuit further instructs that "where the state court rendering the judgment would give it preclusive effect, federal courts *must* give it such preclusive effect" in a later federal action asserting a constitutional claim. *General Foods v. Massachusetts Department of Public Health,* 648 F.2d 784, 786–87 (1st Cir.1981) (emphasis in original); *accord, Brown v. St. Louis Police Department, supra,* 691 F.2d at 395; *New Jersey-Philadelphia Presbytery v. New Jersey State Bd. of Higher Educ.,* 654 F.2d 868, 876, 877 n. 15 (3d Cir.1981); *Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1241–43 (5th Cir.1981). Maine law extends res judicata effect to a final judgment involving the same "cause of action" between the same parties or their privies, so as to bar later litigation of any issue which was "tried or might have been tried" in the

earlier action, *Beegan v. Schmidt,* 451 A.2d 642, 644 (Me.1982); *Kradoska v. Kipp,* 397 A.2d 562, 565 (Me.1979); *Bray v. Spencer,* 146 Me. 416, 418, 82 A.2d 794, 795 (1951), and accords with res judicata principles applied by the First Circuit in federal actions under section 1983, see, e.g., *Ramirez Pluguez v. Cole,* 571 F.2d 70 (1st Cir.1978); *Lovely v. Laliberte,* 498 F.2d 1261 (1st Cir. 1974).

■ Res Judicata precludes later litigation of any part of the same claim or cause of action, *see, e.g., Landrigan v. City of Warwick,* 628 F.2d 736, 740–41 (1st Cir. 1980); *Beegan v. Schmidt, supra,* between the same parties ·or their privies, *see, e.g., Griffin v. Burns,* 570 F.2d 1065, 1071 (1st Cir.1978), *Arsenault v. Carrier,* 390 A.2d 1048 (Me.1979), involved in an earlier action resulting in a final judgment on the merits, *see Hernandez Jimenez v. Calero Toledo,* 576 F.2d 402, 403–04 (1st Cir.1978); such a state court judgment bars a section 1983 claim provided there was a "full and fair opportunity to litigate [the] federal claims" in the state court, *see Allen v. McCurry, supra,* 449 U.S. at 104.

The final judgment interposed by the defendant Town as a bar to the present action represents an adjudication on the merits of all claims which were "tried or might have been tried," *see Beegan v. Schmidt, supra,* 451 A.2d at 644, in the state court.[7]

■ It is necessary to consider whether the due process claims asserted in the present action constitute part of the same cause of action disposed of in state court.

---

**7.** Plaintiff argues that the state court judgment does not bar her from asserting her own constitutional rights, because the discussion in the "opinion and order" of the state court trial judge refers to "the plaintiff," who, from the context of the discussion, appears to be Clarence Harrington. Thus, she asserts, the judgment does not operate as a final determination of *her* rights in the property as joint tenant with Clarence Harrington. However, the pertinent discussion in the opinion and order only deals with the particular factual issue there presented by the parties, that is, whether Clarence Harrington had paid the taxes in question pursuant to an oral agreement with town officials, as claimed. Marjorie Harrington is

named as a party in the captions of all of the pleadings and of the opinion and order. Moreover, the text of the judgment specifically refers to her as well as to her husband.

Although Marjorie Harrington was a co-plaintiff and co-defendant-in-counterclaim in the state court action, whereas she is the sole plaintiff here, there is no suggestion that she was not given notice of the state court proceedings. Furthermore, her due process claims in no way conflict with the claim, advanced through the testimony of her husband, that the taxes had in fact been paid; she was therefore not prevented from raising the present due process claims in the prior action.

To the extent that a second action advances any part of the same claim or cause of action, an otherwise qualified judgment in the first action 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'

Wright, Miller & Cooper, *supra* note 6, § 4407 at 48, *quoting Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). "What is a 'cause of action' for purposes of res judicata cannot be determined with precision." 1B *Moore's Federal Practice* ¶ 0.410, at 1154 (1982). Under the "transactional" or "pragmatic" definition adopted by Maine law, a *cause of action* is "the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Kradoska v. Kipp,* 397 A.2d 562, 568 (Me.1979), *quoting* 1 R. Field, V. McKusick & L. Wroth, *Maine Civil Practice* § 18.1 (1959). The First Circuit similarly precludes successive suits involving the "same operative facts," *Lovely v. Laliberte, supra,* 498 F.2d at 1263. *Cf. Landrigan v. City of Warwick, supra,* 628 F.2d at 741 [permitting subsequent suit based on "distinct wrongs resting on different factual bases"].

■ The present due process claims were assertible by plaintiff in the state trial court, both in support of her title claim and by way of defense against the Town's counterclaim. "[E]ven perfect defenses of which no proof was offered" cannot be asserted as constitutional claims in a subsequent action under section 1983, *Lovely v. Laliberte,* 498 F.2d at 1263, *quoting Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1877). *See also Fortune v. Mulherrin,* 533 F.2d 21 (1st Cir.1976) (*per curiam*); *Robbins v. District Court,* 592 F.2d 1015 (8th Cir.), *cert. denied,* 444 U.S. 852,

100 S.Ct. 107, 62 L.Ed.2d 69 (1979); *Godoy v. Gullotta,* 406 F.Supp. 692 (S.D.N.Y.1975); *Mertes v. Mertes,* 350 F.Supp. 472 (D.Del. 1972), *aff'd mem.* 411 U.S. 961, 93 S.Ct. 2141, 36 L.Ed.2d 681 (1973).

Moreover, the facial challenge to the constitutionality of the tax lien foreclosure statute and the related due process claim that plaintiff was not given adequate notice of the existence of the tax lien are not based on facts unknown to plaintiff at the time of the state court action. Nor did plaintiff expressly reserve in the state court her right to litigate any constitutional claim in federal court. *See England v. Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).[8]

The Supreme Court has suggested a possible exception to the application of res judicata and collateral estoppel in section 1983 actions "where state law did not provide for procedures for litigation of constitutional claims, or where a state court failed to even acknowledge the existence of the constitutional principle on which the litigant based his claim," *Allen v. McCurry, supra,* 449 U.S. at 101, 101 S.Ct. at 418. *See also Edwards v. Arkansas Power & Light Co.,* 519 F.Supp. 484, 486–87 (E.D.Ark.1981) [failure to avail oneself of opportunity to present federal constitutional issue in state court condemnation proceeding does not mean state court procedures were inadequate], *rev'd on other grounds,* 683 F.2d 1149 (8th Cir.1982).

The plaintiff does not, nor does it appear that she can successfully, assert that she could not have raised these constitutional claims in the state trial court. Not until its 1979 decision in *Thiboutot v. State,* 405 A.2d 230 (Me.1979), *aff'd,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), did the Law Court determine that a section 1983 action

**8.** In the *England* case, the Supreme Court held that where a federal constitutional claim is reserved, in a state court action which follows a federal court dismissal on abstention grounds, by informing the state court of an intention to proceed in federal court, the federal claim would not be precluded. 375 U.S. at 415–16, 84 S.Ct. at 464–65. Although the First Circuit

has not decided whether *England* applies to a suit *initially* brought in state court, it has indicated some doubt in light of the discussion in *Allen v. McCurry,* 449 U.S. 90, 101–02 n. 17, 101 S.Ct. 411, 418 n. 17, 66 L.Ed.2d 308 (1980). *See Partido Nuevo Progresista v. Barreto Perez,* 639 F.2d 825, 826–27 n. 2 (1st Cir.1980).

would lie in the Maine courts, *id.* at 235. Yet the Law Court had entertained similar due process challenges to the Maine tax lien foreclosure statute and its application in reported cases prior to the state court action under consideration here. *See City of Auburn v. Mandarelli,* 320 A.2d 22 (Me. 1974); *Town of Warren v. Norwood,* 138 Me. 180, 24 A.2d 229 (1941). More recently the Law Court once again upheld the constitutionality of the notice provisions of the Maine tax lien statute and their application. *See Cummings v. Town of Oakland,* 430 A.2d 825 (Me.1981). The Court concludes that plaintiff could have litigated her due process claims in the Maine courts, merely by asserting them in timely fashion before the state trial court.

The plaintiff argues that the application of res judicata would "defeat the ends of justice." The Court cannot agree. "The whole doctrine of claim preclusion rests in the determination that justice is better served by attributing finality to judgments that may be wrong than by second efforts at improved results." Wright, Miller & Cooper, *supra* note 6, § 4415 at 135. In a recent antitrust case, *Federated Department Stores v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), the Supreme Court reversed a Ninth Circuit refusal to apply the doctrine of res judicata as a bar to the claims of certain plaintiffs who had failed to appeal the dismissal of the action by the district court for lack of standing, where other plaintiffs had obtained an appellate reversal of the district court ruling on standing. The Supreme Court held that the judgment of dismissal barred a subsequent action by the plaintiffs who had failed to appeal. *Id.* at 402, 101 S.Ct. at 2429.

> 'Simple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata.*'

*Id.* at 401, 101 S.Ct. at 2428, *quoting Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946).

> A mere showing that the second litigation, if allowed to proceed, would produce a different result than the first is not a showing of manifest injustice. Because the doctrine of res judicata effects a balance between competing interests, a certain degree of inequity is inevitable. Res judicata ensures the finality of judicial decisions. It encourages reliance on those decisions, thereby establishing certainty in legal relations. It bars vexatious litigation and promotes economy of time and effort.

*Harrington v. Vandalia-Butler Board of Education,* 649 F.2d 434, 440–41 (6th Cir.1981). *See also Lovely v. Laliberte, supra,* 498 F.2d 1262, 1264 (1st Cir.1974) [the policy rationale of the doctrine of res judicata, the prevention of duplicative litigation, obtains even where later federal suit is brought because "attorney in state proceeding was derelict in failing to present the constitutional defenses"]; *Beegin v. Schmidt,* 451 A.2d 642, 646 (Me.1982) ["doctrine of res judicata is justified by concerns for judicial economy, the stability of final judgments, and fairness to litigants"].

The plaintiff alleges unfairness in the refusal of the Law Court to consider her constitutional claims for the first time on appeal, but she asserts no reason or explanation for the failure to present these constitutional claims to the state trial court before whom the necessary factual findings were to have been made. The refusal of the Law Court to pass on the merits of the constitutional claims does not vitiate the res judicata effect of the state court judgment. *See Mertes v. Mertes,* 350 F.Supp. 472, 474 (D.Del.1972), *aff'd mem.,* 411 U.S. 961, 93 S.Ct. 2141, 36 L.Ed.2d 681 (1973). The First Circuit has expressly rejected the "mistaken belief that ... federal courts are the ultimate resolvers of all wrongs," *Fortune v. Mulherrin,* 533 F.2d 21, 22 (1976) (*per curiam*), in appropriate recognition of the fact that "state courts, too, are guardians of the federal constitution," *Lovely v. Laliberte,* 498 F.2d 1261, 1263 (1st Cir.1974).

**1378**

There are no overriding public policy considerations which render the doctrine of res judicata inapplicable in the present case. *Compare Ferguson v. Winn Parish Police Jury,* 589 F.2d 173, 176 n. 6 (5th Cir.1979) ["Principles of res judicata are not strictly applied in voting rights cases because their application would unfairly deny the members of a large class fundamental constitutional rights merely because counsel representing the named plaintiffs in the case made a legal error."] *United States v. LaFatch,* 565 F.2d 81 (6th Cir.1977), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978) [public policy favors cooperation with law enforcement authorities].

Finally, it has been aptly observed that "litigation seeking to establish ownership of property provides the clearest example of results dictated by the need for repose." Wright, Miller & Cooper, *supra* note 6, § 4408 at 65, § 4414 at 112. *See United States v. Perry,* 473 F.2d 643 (5th Cir.1973) [IRS cannot set aside transfer of real property after having been defaulted in earlier state court action brought by transferor to quiet title, because state court judgment barred government tax lien claims].

### III

### CONCLUSION

The present action is barred by the res judicata effect of the prior state court judgment.

The motion for summary judgment in favor of the defendant is hereby GRANTED.

SO ORDERED.