Lemuel M. COLVIN, et al., Plaintiffs,

v.

Stephen B. DEATON, etc., et al., Defendants.

Civ. A. No. 82-0094-C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Jan. 13, 1984.

Steven D. Rosenfield, Charlottesville, Va., Dennis G. Merrill, Richmond, Va., for intervenor, Com. of Va.

Richard H. Barrick, Stephen B. Deaton, Roger C. Wiley, Jr., Shelia C. Haughey, Charlottesville, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The ten plaintiffs in the above-referenced lawsuit filed their *in forma pauperis* complaint on December 15, 1982, seeking declaratory and injunctive relief and damages under 42 U.S.C. §§ 1983 and 1985.[1] The court has jurisdiction to hear this lawsuit under 28 U.S.C. §§ 1331(a), 2201, and 2202. The plaintiffs have all been interdicted pursuant to Va.Code § 4–51, which authorizes Virginia's circuit courts to prohibit the sale of alcoholic beverages to, *inter alia,* any person who has shown himself to be an habitual drunkard. From the record before the court, it appears the plaintiffs have all been convicted of being drunk in public, pursuant to Va.Code § 18.2–388, numerous times. Over a thirty month period, the number of drunk in public convictions among the plaintiffs ranges from a low of 17 to a high of 74. In their lawsuit, the plaintiffs assert the following:

1. The phrase "habitual drunkard" in Va.Code § 4–51, is, both on its face and as applied to each plaintiff, vague and without a clear and uniformly applicable standard;

2. The defendant City of Charlottesville, through its City Council's instruction to its Commonwealth Attorney's office to proceed with interdiction against the plaintiffs, has adopted an official policy of class-based discrimination which deprives the plaintiffs of equal protection; and

3. Defendants Barrick and Deaton's conduct in enforcing Va.Code § 4–51 against one class of alleged alcohol abusers, such as the plaintiffs, but not against another class, such as individuals convicted of driving while under the influence of alcohol, constitutes discriminatory enforcement of the law, depriving the plaintiffs of the equal protection of the laws.

The plaintiffs have asked the court for the following relief:

1. A declaration that Va.Code § 4–51, insofar as it employs the phrase "habitual drunkard", is unconstitutionally vague, violating their rights to due process under the Fourteenth Amendment to the United States Constitution;

---

1. The court has been made aware that two plaintiffs, Alonzo Harlow and Horace Harlow, have died since the suit was filed. The court will consider their claims no further.

2. A declaration that the official policy formulated by the defendant City of Charlottesville, and executed by defendants Barrick and Deaton, violates 42 U.S.C. § 1985, as an intentionally discriminatory enforcement of Va.Code § 4–51 which deprives the plaintiffs of their rights to equal protection under the Fourteenth Amendment to the United States Constitution;

3. Compensatory damages of $100.00 for each plaintiff;

4. Injunctive relief; and

5. Attorney's fees.

The defendants responded to the plaintiffs' complaint with motions to dismiss. The plaintiffs then filed a motion to consolidate the instant lawsuit with *Burnette v. Robertson,* Civil Action No. 83–0008–C. On April 2, 1983, all parties in both suits appeared, by counsel, to argue these motions. Accordingly, the matter is now ripe for disposition. The court will deny the plaintiffs' motion to consolidate and dismiss this action on the grounds that it is *res judicata.*

The plaintiffs' motion to consolidate will be denied because of the differing factual and legal bases for the two lawsuits. The instant suit includes a cause of action against a municipality—the City of Charlottesville—for conspiracy with the local Commonwealth's Attorney. There is no similar allegation in Civil Action No. 83–0008–C. In addition, at this point, the court is not prepared to say that the plaintiffs in the instant suit stand in the same position with respect to the application of *res judicata* principles as those plaintiffs in Civil Action No. 83–0008–C.

From the record before the court, it appears that all ten plaintiffs in this action were interdicted in the Circuit Court for the City of Charlottesville on June 28, 1982. The court order specified that the sale of

alcoholic beverages to each would be prohibited until further order of that court. Evidence was taken, which was not contradicted, demonstrating to the satisfaction of the state circuit court that each had shown himself to be an habitual drunkard within the meaning of Va.Code § 4–51. Those interdicted were represented by the same counsel in those proceedings as the one who represents them in their suit in this court. Their attorney raised none of the alleged constitutional infirmities concerning the wording and application of section 4–51 in state court which he raises here in this court.

Defendants Barrick and Deaton, in their motion to dismiss, raise three purely legal defenses to the complaint: (1) the plaintiffs are barred by *res judicata* and collateral estoppel; (2) the plaintiffs lack standing to challenge § 4–51 as unconstitutionally vague; and (3) the complaint fails to state a claim upon which relief can be granted. The defendant City of Charlottesville raises all but the *res judicata* and collateral estoppel defense. The court finds that consideration of this entire lawsuit is barred by the doctrine of *res judicata,* and consequently this suit must be dismissed against all defendants.[2]

Defendants Barrick and Deaton have asserted from the start that the decision of the United States Supreme Court in *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) is dispositive on the *res judicata* question. *McCurry* involved a 42 U.S.C. § 1983 claim for damages resulting from an allegedly unconstitutional search and seizure. The federal action under section 1983 followed a state court criminal proceeding in which Fourth and Fourteenth Amendment challenges to the admissibility of evidence seized in the course of the search had been unsuccessfully asserted by the defendant. In *McCurry,* the Supreme

2. This court has previously ruled that the application of Va.Code § 4–51 was not unconstitutionally vague when applied to interdict an habitual drunkard who was shown to be an alcoholic for fourteen years and had been convicted 59 times of public drunkenness over a two-year period. *See Fisher v. Coleman,* 486 F.Supp. 311

(W.D.Va.1979) *aff'd* 639 F.2d 191 (4th Cir.1981). The court today does not address the merits of the instant suit, for that would be improper given the court's holding that consideration of the lawsuit is barred under the doctrine of *res judicata.* However, the *Fisher* opinion remains an accurate statement of the law in this district.

Court held that the plaintiff's section 1983 action was barred by the collateral estoppel effects of the earlier state court ruling which upheld the constitutionality of the search and seizure. *See* 449 U.S. at 105, 101 S.Ct. at 420. In so ruling, the Supreme Court observed:

This Court has never directly decided whether the rules of res judicata and collateral estoppel are generally applicable to § 1983 actions. But in *Preiser v. Rodgiguez,* 411 U.S. 475, 497 [93 S.Ct. 1827, 1840, 36 L.Ed.2d 439], the Court noted with implicit approval the view of other federal courts that res judicata principles fully apply to civil rights suits brought under that statute.... And the virtually unanimous view of the Courts of Appeals since *Preiser* has been that § 1983 presents no categorical bar to the applications of res judicata and collateral estoppel concepts. These federal appellate court decisions have spoken with little explanation or citation in assuming the compatibility of § 1983 and rules of preclusion, but the statute and its legislative history clearly support the courts' decisions.

*Id.* at 96–97, 101 S.Ct. at 416 (citations omitted).

However, *McCurry* is not in and of itself dispositive of the issue before this court, for the *McCurry* majority itself insisted that it left open "the question whether a § 1983 claimant can litigate in federal court an issue he might have raised but did not raise in previous litigation." *Id.* at 94 n. 5, 101 S.Ct. at 415 n. 5. From the record, it would appear that no federal issues were raised at the state circuit court interdiction hearing, and the plaintiff's attorney has submitted an affidavit to that effect. However, it is also clear from the record that the plaintiffs were represented by counsel at their state court hearing, and therefore had a full and fair opportunity to raise their constitutional claims at that hearing. Accordingly, the plaintiffs do not appear before this court in such a posture as to bring them within the general limitation on *res judicata* and collateral estoppel recognized in *McCurry:* these concepts

"cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case (citations omitted)." *Id.* at 95, 101 S.Ct. at 415.

While the precise holding in *McCurry* may not be dispositive, the court believes that the direction in which *McCurry* points in controversies such as these indicates strongly that this lawsuit must be dismissed on *res judicata* grounds. The Supreme Court's broad discussion of *res judicata* and collateral estoppel in *McCurry* states in the strongest language that actions brought under the Civil Rights Act are not exempt:

[N]othing in the language of § 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U.S.C. § 1738 [the statute requiring federal courts to give state court rulings 'full faith and credit']. Section 1983 creates a new federal cause of action. It says nothing about the preclusive effects of state court judgments.

*Id.* at 97–98, 101 S.Ct. at 416–17. Thus, it would seem that in *McCurry* the Supreme Court has taken a strong view in favor of full application of *res judicata* and collateral estoppel rules in section 1983 cases.

Although the court can find no authority on this issue in the Fourth Circuit, the vast majority of cases from other circuits have held the normal principles of *res judicata* apply. *See e.g. Lee v. City of Peoria,* 685 F.2d 196 (7th Cir.1982); *Southern Jam, Inc. v. Robinson,* 675 F.2d 94 (5th Cir. 1982); *Harrigton v. Inhabitants of Town of Garland, Maine,* 551 F.Supp. 1371 (D.Me.1982), *aff'd* 715 F.2d 1 (1st Cir.1982). It is true that the Second Circuit Court of Appeals has expressly refused to follow the approach which *McCurry* seems to mandate, holding instead that "a prior state court proceeding does not bar federal court consideration of constitutional claims not actually litigated and determined in that proceeding". *Gargiul v. Tompkins,*

704 F.2d 661, 666 (2d Cir.1983). This view has not only been challenged by one of that Circuit's own district courts in *Sachetti v. Blair,* 536 F.Supp. 636 (S.D.N.Y.1982), but one respected commentator has said of the Second Circuit's approach that:

> The Second Circuit refusal to apply claim preclusion seems inconsistent with the [McCurry] opinion in several ways.... Freedom to go to federal court in defiance of state claim preclusion rules and at the expense of orderly state procedure can be justified most easily by relying on propositions rejected by the [McCurry] Court—that state courts cannot be trusted to adjudicate federal rights, or that every person asserting a federal right should have an opportunity to advance it in federal court.

18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4471, at 719–20 (1981).

Plaintiff's attorney cites this court to *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), for the proposition that a federal remedy under 42 U.S.C. § 1983 is supplementary to the state remedy, and that state court relief need not be first sought and refused before utilizing the federal courts. The plaintiffs here confuse the exhaustion and *res judicata* doctrines. The *McCurry* court discussed *Monroe* and interpreted that case as wholly consistent with the full application of traditional preclusion rules. *See McCurry,* 449 U.S. at 100–01, 101 S.Ct. at 417–18.

 Having found that cases brought under the Civil Rights Act are not exempted from the normal principles of *res judicata* and collateral estoppel, the court must now look to whether under Virginia law the courts of that state would give preclusive effect to the interdiction proceedings in Charlottesville Circuit Court held on June 28, 1982, as against the claims raised in this action. Under 28 U.S.C. § 1738, a federal court must give a state court judgment the same force and effect as it has in the state in which it was rendered. Virginia courts have stated the general rule of *res judicata* in these terms.

When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive of the latter, not only as to every question which was decided, but also *as to every other matter which the parties might have litigated and had determined,* within the issues as they were made or tendered by the pleadings, *or as incident to or essentially connected with the subject matter of the litigation, whether the same as a matter of fact were or were not considered.* As to such matters a new suit on the same cause of action cannot be maintained between the same parties.

*Worrie v. Boze,* 95 S.E.2d 192, 198 Va. 533 (1956) (emphasis added). Under such an analysis, the plaintiffs' claim would be barred if raised in a Virginia state court. Their present claim for declaratory, injunctive, and monetary relief arises from the very fact of the state court proceedings themselves. Had any of the three causes raised in this court proceeding been plead in state circuit court as a defense, and had any of those defenses prevailed, the plaintiffs would not have been interdicted and the suit at bar would most certainly not have been initiated.

The facts and legal analysis at work in this case is, in all material particulars, precisely on point with the facts and holding in *Southern Jam, Inc. v. Robinson,* 675 F.2d 94 (5th Cir.1982). There, the plaintiff filed an action under 42 U.S.C. §§ 1983 and 1985 against a County Commissioner for infringement of certain First Amendment freedoms. A prior Georgia state court proceeding had been initiated by the Commission to prevent Southern Jam from conducting a rock and roll concern until the group had complied with an ordinance recently adopted by the Commission. In that state court hearing, the rock group raised certain due process and equal protection issues, but left untouched its First Amendment challenges. The Fifth Circuit recognized that whatever doubts it may have had about requiring a party to raise its federal constitutional issues in state

court, those doubts were resolved by the Supreme Court in *McCurry*. *See id.* at 96. The *Southern Jam* court indicated that it made no difference that the plaintiff in the federal action was a defendant in the state court action, and hence involuntarily forced to litigate his federal constitutional issues in state court. "[A]s long as the parties had a full and fair opportunity to litigate their constitutional allegations in the prior state court proceedings, ... the defense of res judicata is viable in a subsequent § 1983 action". *Id.* at 97. Since Georgia law generally requires a party to raise any claim it may have against an opposing party which arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, the Fifth Circuit held that the unsuccessful defendant in the state court proceeding was barred by *res judicata* from bringing suit on constitutional claims that could have been, but were not, raised in the prior state proceeding. *See id.* at 98.

Under a like analysis, this court finds this suit barred by the doctrine of *res judicata*. An appropriate Order will this day issue.